### PEMBERTON v. MORRIS FERTILIZER CO.

(Circuit Court of Appeals, Fifth Circuit. March 13, 1923.)

No. 3982.

1. **Master and servant** ⬥⟝332(2)—**Evidence held to justify directed verdict, because not warranting inference servant had authority to use automobile.**

   Evidence which showed that the servant driving defendant's automobile, causing injury, was using car for his own purposes and not in defendant's business, and which failed to show he had express permission to use it, or was permitted by custom to use it, *held* insufficient in view of his positive testimony he had no such authority, to warrant an inference the servant had authority to use the automobile, so that a verdict was properly directed for defendant.

2. **Master and servant** ⬥⟝302(6)—**Authority of servant to use automobile essential to master's liability.**

   The owner's authority, express or implied, to his servant to use the owner's automobile for the servant's own business, is essential to the owner's liability for injuries inflicted by the servant while using the automobile.

In Error to the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Action at law by Grace Pemberton against the Morris Fertilizer Company. Judgment for defendant on directed verdict, and plaintiff brings error. Affirmed.

A. H. King and George C. Bedell, both of Jacksonville, Fla. (Roswell King, of Jacksonville, Fla., on the brief), for plaintiff in error.

---

⬥⟝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Peter O. Knight, A. G. Turner, and T. M. Shackleford, Jr., all of Tampa, Fla. (C. Fred Thompson and Shackleford & Parks, all of Tampa, Fla., and Wilson & Boswell, of Bartow, Fla., on the brief), for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. This is an action ex delicto by Grace Pemberton, plaintiff, to recover damages for the death of her husband, who was run over on a public highway and killed by an automobile owned by the Morris Fertilizer Company, defendant.

The defendant operated a phosphate mine about 1½ miles from Bartow, Fla. Waddell was superintendent of the mine, and Andrews was assistant superintendent. Compton was engineer of the power house, and had charge of the boilers, pumps, and electric plant. The defendant company furnished an automobile to the superintendent. On the day of the accident, Waddell being absent, Andrews was acting as superintendent, and Compton, desiring to go to Bartow on an errand of his own, took the company's automobile for that purpose, without permission of Andrews, or of any one else. He stated to Waddell's 14 year old son simply that he was going to take the automobile because his own was out of order. While returning from Bartow, Compton ran the company's automobile over plaintiff's husband in such manner as to warrant the conclusion that he was negligent.

The plaintiff relies upon the testimony of three witnesses, Robinett, Langford, and Turner, to prove that Compton's use of the automobile was by the defendant's express or implied authority. Robinett testified:

"I had known the car 18 months. It was usually driven by Mr. Waddell, personally. I drove it occasionally. I drove it to Bartow to get the pay roll, and on one or two other occasions to get supplies for the company. There were one or two others who drove it occasionally—the yardmaster, Lockhart. I have seen Mr. Compton driving it before that time."

Langford testified:

"I had seen him [Compton] drive it before. I could not say how often he had driven it, but I had seen, him driving it before. I could not say just how much, or the times that he did drive it."

Turner testified:

"I knew Mr. M. G. Compton, who was driving the car at the time. I guess I had known him something over a year. I don't know just how long. Mr. Compton drove it some several times, every once in a while; in fact, any time he wanted to, I guess. Mr. Waddell and Mr. Waddell's son and Mr. Waddell's wife, and also Dr. McMurray's boy and Roy Barns, a negro, and myself—most anybody that could drive a car—drove it."

Compton testified that he had used the automobile on three or four occasions before the accident, but always on the company's business and at the superintendent's direction, and in this he was corroborated by Waddell. He further testified that he thought Waddell was the owner of the automobile, and that on the day of the accident he went to Waddell's son and said to him:

" 'Addison, I want to use the Buick; my car is broken down and I want to take my wife to town.' He did not say I could or I could not use it."

The court, being of opinion that the evidence, when construed most favorably for the plaintiff, failed to disclose liability on defendant's part, directed a verdict, and entered judgment for the defendant.

[1] In our opinion, the District Judge was right. It is undisputed that Compton was using the automobile for purposes of his own, and not in the company's business. It is not contended that he had express permission to use it. The utmost claimed is that by custom he was permitted to use it; but the evidence does not sustain even the latter theory. The testimony of plaintiff's witnesses is entirely consistent with testimony for the defendant to the effect that Compton never had used the automobile for purposes of his own before the occasion in question. Turner's testimony, that Compton used it whenever he wanted to, is a mere guess, as it purports to be, and cannot prevail as against positive testimony to the contrary.

[2] The owner's authority, express or implied, is essential to his liability. That principle is recognized in every decision cited by plaintiff's counsel. Such authority was shown by the evidence in Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 South. 975, L. R. A. 1917E, 715, chiefly relied on by the plaintiff in this case. The statement of facts in that case is as follows:

"It appears that the Southern Cotton Oil Company owned the automobile and authorized its daily use by the driver, who was the cashier of the company, in going to and fro between the company's milling plant in the suburbs of Pensacola, Florida, and the business center of the city, to transact the business of the company, and incidentally the driver to get his dinner. The driver had, while in the city during the noon hour, frequently used the automobile in taking a young lady to her place of business from her home, several blocks away from the direct route to the plant. This was known to the managing officer of the company, and not objected to by him. The young lady did not work for the defendant. On the day of the accident the driver, while in the city, as he had frequently done, drove to the young lady's home to take her to her office. Upon arriving at her home. he was requested to go to a nearby residence for her raincoat. While going for the raincoat, the injury occurred by a collision in the street."

These facts should be borne in mind when considering the opinion on the second writ of error, reported in 80 Fla. 441, 86 South. 629, 16 A. L. R. 255. It clearly appears in this case that Compton was not acting within the scope of his employment, and was not using the defendant's automobile by its authority, or with its knowledge or consent.

It further appears, in each of the cases relied on to sustain plaintiff's right of recovery, that the automobile, which caused the injury for which the owner was held liable under the doctrine of respondeat superior, initially was taken out of the master's custody or possession, and started on its journey by the servant in the master's interest; but it is unnecessary to consider other phases of the evidence. Lack of authority from the master is enough to defeat recovery in this case.

The judgment is affirmed.