## MOORE et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 20, 1924. Rehearing Denied November 24, 1924.)

No. 4306.

1. **Criminal law ⊛935(3), 1036(8)—Question of sufficiency of evidence cannot be first raised by motion for new trial or in appellate court.**

Question of sufficiency of testimony to support verdict cannot be raised for first time by motion for new trial or in appellate court.

2. **Post office ⊛49—Testimony as to reasonable cost of drilling well held properly excluded in prosecution for use of mails to defraud.**

In prosecution for using mails in executing device, scheme, and artifice to defraud by false and fraudulent pretenses in sale of interests under trust for drilling of oil wells, testimony as to reasonable cost of drilling a well to certain depth *held* properly excluded.

3. **Criminal law ⊛1054(1)—Exclusion of testimony not considered, in absence of exception.**

In absence of exception, exclusion of testimony need not be considered in appellate court.

4. **Criminal law ⊛957(5)—Affidavit of juror as to discussion by jurors incompetent on motion for new trial.**

On motion for new trial, affidavit of juror that failure of defendants to testify in their own behalf was discussed by jurors during their deliberations was incompetent.

5. **Criminal law ⊛878(2)—General verdict of guilty imports conviction as to each count.**

General verdict of guilty, under indictment containing several counts, of necessity imports conviction as to each count, and is in proper form.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Benjamin F. Bledsoe, Judge.

E. N. Moore and another were convicted of an offense, and bring error. Affirmed.

On the 18th day of August, 1922, the defendant Turman, together with one Barrick and one Price, executed a trust agreement, reciting that they were about to execute an oil and gas lease of a certain six-acre tract in Los Angeles county, Cal., with the defendant Moore as lessor, upon a rental or royalty of 25 per cent. payable to the lessor, and declaring that the property so acquired, together with the income, profits, and proceeds thereof, would be owned, held, developed, used, managed, controlled, and disposed of by them in trust for the beneficial use of the holders from time to time

of the certificates or shares provided for therein; that the trust and the business transacted by them should be designated as "Joe B. Turman Oil Syndicate No. 2"; that the capital of the trust would be $500,000, represented by 5,000 unit shares having a par value of $100 each; that 3,000 of such unit shares would be issued and delivered for the purpose of providing machinery, tools, equipment, and labor for drilling two wells on the leased premises; that 1,000 shares would be issued and delivered to the defendant Moore, in consideration of the execution of the lease, and that the remaining 1,000 shares would be issued and sold and the net proceeds paid to one Josleyn, the owner of the leased premises; that the holder of each unit share would be entitled to $1/5000$ interest in the net proceeds of all oil and gas produced and saved therefrom, and to a proportional share of all moneys received by the trust from the sale of units and not used in drilling operations; that the trustees would have full management and control of all operations and of the trust property; and that they would receive no compensation whatever for their services until oil was produced under the lease, and thereafter only reasonable compensation, not exceeding $300 per month. The trust agreement contained other details not deemed material here.

At or about the same time the syndicate entered into an agreement with the defendant Moore, wherein the latter agreed to drill the two wells and to furnish all necessary tools, machinery, equipment, and labor used in the drilling operations, and the syndicate on its part agreed that the 3,000 shares would be deposited in escrow with a certain bank, with instructions to the bank to deliver the units to Moore in installments at certain times as the work progressed. The syndicate thereupon made application to the commissioner of corporations of the state of California for a permit authorizing the trust to issue and sell its certificates. The permit was granted, authorizing the issuance and sale of 1,000 beneficial interests or shares designed for the owner of the leasehold premises, authorizing the release of the 3,000 shares for drilling purposes in accordance with the schedule contained in the drilling contract upon the written order of the commissioner of corporations, and authorizing the release to the defendant Moore of one share whenever three shares were released under the drilling contract. It was further provided that the total commissions and all other expenses in connection with the sale of the shares should not exceed 20 per cent. of the amount paid in cash; that prior to the sale or issuance of any beneficial interests or shares the trust agreement should be filed for record in the office of the county recorder of Los Angeles county; and that a true copy of the permit should be issued to each subscriber or purchaser of securities before his subscription therefor was taken or any sale thereof made.

The indictment charged that the defendants, Moore and Turman, devised a scheme and artifice to defraud certain persons therein named, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises; that it was part of such scheme and artifice that the defendants would organize the syndicate known as Joe B. Turman Oil Syndicate No. 2; that the defendants would obtain from the commissioner of corporations a permit for the issuance and sale of the shares; that the defendants would represent that the syndicate would sell and issue the 3,000 drilling shares for the sole purpose of providing funds for drilling the two wells on the leased premises, and would release and issue the shares, as the drilling progressed, in installments fixed by the drilling contract; that the syndicate would sell and issue 1,000 shares, and would deliver the proceeds to the order of Josleyn, the owner of the leased premises; that the 4,000 shares would be deposited in escrow with the Continental National Bank of Los Angeles until the time specified therein for the delivery of the installments to the persons thereto entitled; that the syndicate would issue to the defendant Moore, as lessor, the remaining 1,000 shares as specified in the certificate; and that not more than 20 per cent. of the proceeds of the shares should be expended for commissions. The indictment then averred that these several representations were false; that defendants would cause the syndicate to issue and sell the 3,000 shares without regard to the installments fixed by the drilling contract or the progress of the drilling, and in greater amounts than authorized by the contract, and would convert to their own use a portion of the proceeds from the sale of the shares; that the defendants would sell for $100,000 the 1,000 shares designed for the owner of the leased premises, and pay her the sum of $14,000 in full payment for the lease, and convert to their own use the remaining $86,000; that none of the aforesaid shares would be placed in escrow in the

bank, and that more than 20 per cent. of the proceeds of the shares sold would be expended as commissions and expenses in making the sales. The indictment charged other false representations, not deemed material here, and set forth in seven counts as many letters placed in the post office to be delivered by the post office establishment of the United States for the purpose of executing the scheme or artifice.

Upon the trial the jury returned a general verdict of guilty, and the case has been brought to this court by writ of error.

J. Robert O'Connor and Schenck & Kittrelle, both of Los Angeles, Cal., for plaintiffs in error.

David V. Cahill and Charles L. Nichols, Sp. Assts. Atty. Gen., for the United States.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge (after stating the facts as above). [1] The first and principal assignment of error challenges the sufficiency of the testimony to support the verdict. No such challenge was interposed during the trial in the court below, by motion for a directed verdict or otherwise, and the rule is well settled that that question cannot be raised for the first time by motion for a new trial or in the appellate court. Bilboa v. United States (C. C. A.) 287 F. 125. But, aside from this, the assignment is without merit. The representation that the 3,000 drilling shares placed in escrow would only be released and sold as the drilling progressed under the drilling contract, was clearly established. That representation was a material one, and its falsity was all but confessed. The plaintiffs in error sold other shares not placed in escrow to an amount far in excess of the requirements of the drilling contract, and even far in excess of the total issue authorized, and converted large sums to their own use, in the face of the provision in the trust agreement that they should receive no compensation for their services until oil was actually produced, and that the proceeds of all shares sold and not used in drilling should remain the property of the shareholders. In fine, the jury was warranted in finding that the whole scheme was conceived in fraud and was consummated through the misuse of the mail.

[2, 3] The exclusion of testimony as to the reasonable cost of drilling a well to the depth of 5,505 feet is next assigned as error. When this testimony was offered, the

court stated that no such question was involved in the case and there the matter ended. We think the statement of the court was correct, but in any event there was no exception to the ruling complained of.

[4] In support of a motion for a new trial the plaintiffs in error filed an affidavit of one of the jurors stating that the failure of the plaintiffs in error to testify in their own behalf was discussed by the jurors during their deliberations. The incompetency of such an affidavit is at once apparent. McDonald v. Pless, 206 F. 263, 124 C. C. A. 131; Hyde v. United States, 225 U. S. 347, 354, 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614.

[5] Lastly, an objection is urged to the form of the verdict. A general verdict of guilty under an indictment containing several counts of necessity imports a conviction as to each count. Claassen v. United States, 142 U. S. 140, 146, 12 S. Ct. 169, 35 L. Ed. 966; Ballew v. United States, 160 U. S. 187, 197, 16 S. Ct. 263, 40 L. Ed. 388.

The judgment of the court below is affirmed.