## STANDARD ACC. INS. CO. v. RIVET et al.
### No. 8275.

Circuit Court of Appeals, Fifth Circuit.
March 19, 1937.

Jas. G. Schillin and Eraste Vidrine, both of New Orleans, La., and M. U. Hayden, of Detroit, Mich., for appellant.

Robert B. Todd, of New Orleans, La., and Frank B. Ellis, of Covington, La., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Appealing from a judgment on a jury verdict, appellant assigns as error the denial of its motion for a direction. The suit was for damages from the death of plaintiff's son in a collision between an automobile, in which he was riding as a guest, and a truck owned by Frank de Latour, appellant's named insured. The action, under the authority of Act No. 55 of the General Assembly of Louisiana of 1930 was brought directly against appellant, the insurance carrier. It was pitched on two grounds. One was that, at the time of the collision the truck was being operated by a servant of the owner, in the business of the owner, and within the scope of the servant's authority. The other was that, in addition to protecting the named assured, the policy by express provision protected any person driving the truck with the consent of the owner, and that at the time of the collision it was being so driven. De-

fendant admitted in its pleadings that the truck was de Latour's and that at the time of the accident it was being driven by Mansion, a colored employee of de Latour, whose duty it was to drive the truck on his employer's business. That the truck was at the time of the accident being driven either on the business, or with the consent or knowledge of its owner, or within the scope of Mansion's employment was categorically denied. In addition, it was specifically alleged that without the knowledge, consent, or permission, and against the standing orders, of de Latour, the truck was being used by Mansion for his own personal and private purposes, to wit, taking his whole family and other relatives and friends, in great numbers, for a pleasure ride. Plaintiff offered evidence as to the actual collision and re-sulting damages, and rested. Defendant proved by de Latour that he was engaged in the wholesale and retail grocery business in New Orleans including eggs and vegetables; that the truck was used in that business, and Mansion was its driver; that his trucks were stored at Hopkins Garage, and that his drivers had instructions to bring the trucks to the garage after the days work was over; that none of the drivers were authorized, or ever had been authorized, to use the trucks except in connection with his business; and that to his knowledge Mansion had never before the night in question done so.[1]

On cross-examination he testified that on that night when he left the store he had instructed Mansion to go to the French Market, buy the usual supplies for the stand, and return the truck to the garage. If he could not get the supplies that night, to go early in the morning, in which event he was to leave the truck at 2311 St. Bernard, opposite the foreman's house. He also testified that that truck and others had been used at night to go as far as Orange, Tex., to get poultry and eggs. "This negro driver had made trips for me for seven years.

---

[1] "None of my employees had any authority, at any time, to use my trucks for anything but my business. I do not give anyone permission to use my trucks. When I saw Mansion after the accident, I asked him what possessed him to use the truck, and he said his wife and children had begged him to take a ride, and I asked him what the truck was doing there at his house, at which time I was informed that they had not been able to get the supplies at the French Market

that evening, and he intended to use the truck in the morning early to get them. They had no authority to use my truck for personal purposes. I did not discharge Mansion because he was a very faithful and competent employee, and to my knowledge he had never before used the truck for personal purposes, nor has he since. No one connected with me has ever used my truck for personal purposes."

His work did not keep him out at night except when he was in the country. To my knowledge this was the first time he had ever used the truck for his own purposes. I did not know that Mansion was using the truck that night, and that is exactly what he told me, that it was the first time he had done so." Mansion's wife testified that she was in the truck at the time of the accident; that she got in right in front of the door; that her children begged her husband to take them for a ride, and begged so hard that he decided to take them; that he never used the truck outside of his boss' business. "There were eleven people in the truck when it was struck from the rear. There were ten people in the back sitting on boxes and tubs, the children and all of us. My sister in law, my four children, my sister in law's three children and a neighbor's boy. We were just taking a ride that night when the accident happened. We were going at a slow pace; we were talking and the children were laughing, just enjoying it." On cross-examination she testified: "That is the first time the truck was ever used to take the family riding that I know of." On recross: "My husband has never driven that truck home on any other night." Mansion testified he had worked for de Latour eight years; that he was driving the truck on the night of the accident, going to take a ride; that the accident happened on the Chef Menteur road about 8:30 p. m. "I was not going any special place that night; the kids wanted a ride and I took them riding; I used this truck for hauling chickens and eggs; I was supposed to leave the truck that night at the foreman's house. Ordinarily I left it at Hopkins garage. I did not leave it there that night because I had to go to the French Market at four in the morning and the garage did not open until six. When I left the store with the truck Mr. Grisoli, the foreman, and I were supposed to go to the French Market and get vegetables and fruit. We could not get the vegetables that night so I brought him home and took the truck to my house. I had never used this truck before for personal purposes. The reason I took it home that night was I live about fifteen blocks away from Mr. Grisoli's house where I was supposed to leave the truck. I had to get to the market about four o'clock in the morning, and I did not want to walk that distance in the dark, so I took the truck home and parked it in front of my house. When I got home

I ate and sat on the steps, and all the kids begged me for a ride, and I took them. The truck was a stake body truck, the stakes being removable. I had half way stakes where they were sitting."

Mr. Grisoli testified that he was foreman and salesman for Mr. de Latour and Mansion worked under him. They left the store, Mansion driving, to go to the French Market for vegetables. They could not get the vegetables that night and Mansion brought him to his house, right by the fruit stand Mr. de Latour owns on St. Bernard avenue. Ordinarily the truck was supposed to be put in the garage. His instructions from Mr. de Latour were to put the truck in the garage if they could get what they wanted that night, and, if they did not, to put the truck on St. Bernard Avenue because the garage would not be open early enough in the morning for early marketing, when Mansion was supposed to come and take him to the market.

Hopkins, the garage owner, confirmed defendant's testimony as to garaging with him. No contrary testimony was offered. At the conclusion of the evidence defendant moved for an instruction on the ground that not only had plaintiff failed to prove what he had alleged, that the truck was being driven on the business or with the consent of its owner, but the undisputed evidence had affirmatively established the contrary. The District Judge denied the motion and sent the case to the jury. In this he erred. Appellee, to sustain this action, urges upon us that within the rule of Foundation Co. v. Henderson (C.C.A.) 264 F. 483, the proof that at the time of the accident the truck belonged to de Latour and was being driven by Mansion, his employee, whose business it was to drive the truck, raised the presumption that it was being driven on the owner's business, and therefore with his consent, and that whether defendant's testimony had overthrown this presumption was for the jury and not for the court to say. This will not do. The invoked case is one of master and servant and not of insurer and insured. Besides, it declares plainly that the presumption cannot survive evidence inconsistent with it. Here the whole evidence, not merely some part of it, is so inconsistent. The res gestæ of the matter, the speaking facts themselves—the truck driven at night by a negro employee with a load, not of eggs and vegetables, which it was its business to carry, but of insecurely staked in colored

women and children, perched and sprawled on buckets and tubs out for a joy ride, Chef Menteur way—rebut, repel, indeed negative, this presumption and prevent its arising. It is unreasonable, indeed absurd, to say that these facts as the evidence starkly, and without contradiction, reveals them, are at all consistent with the presumption which arises when proof goes no further than to show ownership of a car, and that it was being driven by its usual driver. In the face of the whole evidence here, there is no room for presumption, nothing to found a verdict on that Mansion was on the business of his employer, was engaged in furthering his affairs. Counsel for appellees recognizes the incongruity between the situation presented by the facts as they are fully revealed and the presumption he would rely on. On page 3 of his brief he declares: "Defendant has attempted to inject into this appeal some question as to the liability of the owner based on the scope of the driver's employment. No such questions are involved as the truck was covered by a policy of insurance which covered any driver using the truck with the owner's permission, though not on the owner's business. It covered anyone therefore driving with the owner's permission, even on business or pleasure of his own." He therefore presses his claim for recovery upon the ground that, though it undisputedly appears that Mansion was not at the time of the collision on the owner's business, the fact that he was authorized to drive the truck on that business, and that that night he had taken it to his house, and later out for a family pleasuring, is sufficient evidence to support a jury inference that the excursion was with the consent of the named insured. None of the decisions appellee cites are on facts comparable to those here. In none of them was there an absolutely new and independent venture entered upon by the employee, not only without the permission, but against the positive instruction of the owner. No one testifies, no single fact or circumstance tends to prove, that Mansion had permission to do what he was doing when the accident occurred. Every one affirms that he did not have permission, indeed that he was prohibited from so using the truck while the facts overwhelmingly show that what the witnesses say is true. Presumptions of the kind appellees invoke are but inferences raised where it is reasonable to raise them. It would be wholly unreasonable to infer from the fact that Mansion, who "though on pleasure bent," "was of a frugal mind," and had chosen his master's truck to jaint in, that its owner was consenting. The natural presumption arising from these facts would be against consent, it would take strong and positive proof of consenting to overcome it. Where, as here, there is not only no proof that consent had been given but uncontradicted proof that it had not, there is nothing for a jury verdict to rest on. The case is ruled by our cases, Pemberton v. Morris Fertilizer Co., 287 F. 517; Columbia Casualty Co. v. Lyle, 81 F.(2d) 281; Martin v. Burgess, 82 F.(2d) 321. It is ruled too by Foundation Co. v. Henderson, supra. For the very evidence which showed that the truck was de Latour's and that Mansion was his driver showed that the use was under circumstances and conditions which not only negative the inference of use by authority and consent, but, raising a positive inference the other way, prevent the inference of consent from being drawn. In the Lyle Case, supra, which is decisive of this one, we have fully investigated and discussed the question and the applicable authorities. Without extending this decision further, we refer to it. To the authorities there cited may be added Waddell v. Langlois (La.App.) 158 So. 665; Indemnity Insurance Co. v. Sanders, 169 Okl. 378, 36 P.(2d) 271; Johnston v. New Amsterdam Casualty Co., 200 N.C. 763, 158 S.E. 473; Johnson v. American Automobile Insurance Co., 131 Me. 288, 161 A. 496. For the failure to direct a verdict for defendant the judgment is reversed and the cause is remanded.

Reversed and remanded.