**DEPARTMENT OF WATER AND POWER OF CITY OF LOS ANGELES v. ANDERSON.**

**No. 8420.**

Circuit Court of Appeals, Ninth Circuit.

March 22, 1938.

Ray L. Chesebro, City Atty., S. B. Robinson, Chief Asst. City Atty., J. M. Stevens, Asst. City Atty., and Fairfax Cosby, G. Ellsworth Meyer, and Mark A. Hall, Deputy City Atty., all of Los Angeles, Cal. (A. S. Henderson, of Las Vegas, Nev., of counsel), for appellant.

Guy E. Baker, Harold M. Morse, C. D. Breeze, and Chas. M. Butts, all of Las Vegas, Nev., for appellee.

Clarence S. Hill, Charles E. Taintor, and Ford Hendricks, all of Los Angeles, Cal., amici curiae.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Appellant seeks to set aside a judgment for $21,904 rendered against it in an action brought by appellee to recover damages for personal injuries sustained by him in a collision of the automobile in which appellee was riding as a guest passenger, with an automobile, belonging to appellant, which was being driven by one Nicoll, one of appellant's employees.

After briefs were filed by both parties hereto, and oral argument of counsel, ·with our permission, a brief of amici curiae was filed wherein it is suggested that counsel (the city attorney of Los Angeles, and his deputies), who appeared for appellant in the Nevada state courts and petitioned for and secured removal therefrom, who thereafter filed an answer on behalf of appellant in the court below, and who tried appellants' cause in that court and who thereafter petitioned for and perfected this appeal and thereafter before us briefed and argued this appeal, were without authority to represent appellant.

Opportunity has been granted by us for appellant to repudiate such of its counsel, but it has not done so.

The city attorney has filed a brief in answer to that of amici curiae, nowhere even intimating his lack of authority to appear for appellant, but therefrom it is patent that the cause was referred to him for attention by the executive officers of the Bureau of Power and Light of the appellant.

■ We will assume that members of the bar formally appearing for litigants before us and in other federal courts are authorized to so appear (Hill v. Mendenhall, 88 U.S. 453, 21 Wall. 453, 454, 22 L.Ed. 616), and will continue to indulge in that assumption until the litigants or such attorneys formally and under oath challenge the truth of such assumption, or proof is submitted challenging the truth of such assumption, sufficient to warrant inquiry regarding such authority.

■ In view of the failure of appellant or its attorneys to deny the authority of such attorneys, we think the suggestion here does not justify such inquiry. 7 C.J.S., Attorney and Client, 882, § 74.

We note that some, if not all of counsel appearing for appellant in the state court, the court below, and before us, are members of the bar of this court.

■ It does not appear that the appearances, defenses, and appeals herein are unauthorized. If it did so appear, we would dismiss this appeal.

We will disregard the suggestions of amici curiae and dispose of this cause on the merits.

Nicoll was employed by appellant to patrol certain territory in which appellant maintained a power transmission line. His hours were from 8 o'clock in the morning to 5 o'clock in the evening, except Saturdays, when he worked until noon. He did not work on Sundays, but he was subject to be called to work at any time. Appellant provided Nicoll with an automobile for the patrol work.

On Friday, September 15, 1933, Nicoll spent the night at his home. The next morning he worked until about 11 o'clock. He then decided to go to Las Vegas, Nev., to visit some friends, and to buy some shirts, a shoeshining outfit, some stamps, and some writing paper, for his own use. He drove appellant's automobile to Las Vegas and made his purchases. Immediately thereafter he engaged in, as appellant says, "what, with charity, may be termed a personal frolic." He was in various degrees of inebriacy from about that time until the time of the collision. He spent Saturday and Sunday nights at a roadhouse some 70 miles from his home. He arose about 3 o'clock on Monday morning and started to drive to his home for the purpose of eating breakfast there at 6 o'clock. After driving about 27 miles the collision occurred. The time of the collision was about 4 o'clock a. m. Appellee sustained injuries.

Appellee brought an action against Nicoll and appellant in a Nevada state court. It was removed to the court below. Appellee contends that two acts of negligence were alleged. The first is that the injury, sustained by him, was proximately caused by Nicoll's· negligence, for which appellant was liable. Appellant now concedes that Nicoll was negligent and that his negligence was the proximate cause of appellee's injuries, but denies any liability therefor. Whether the second act of negligence is properly pleaded is disputed.

Appellee contends that he pleaded that appellant was negligent in intrusting its automobile to Nicoll. The allegations in question are: "That at all the times hereinafter mentioned, defendant Nicoll, had permission and authority from his said employers * * * to use and operate said * * * automobile upon the public highways of the State of Nevada, notwithstanding, that at all said times, the managers, superintendents, and foremen of said employers * * * who were directly over him, and had control of said automobile, and who gave him such permission and authority, well knew that the said Daniel Nicoll was a careless, reckless and incompetent driver

of an automobile, and was addicted to the excessive use of intoxicating liquor."

It was also alleged that Nicoll, at the time of the accident was "grossly intoxicated."

It was further alleged:

"That said collision occurred wholly and solely by and through the negligence of the defendants * * * and that the negligence of the defendants consisted among other things of the following, to-wit:

"1. In then and there failing to have and keep said * * * automobile under proper and reasonable control, so as not to endanger the life and limb of the plaintiff * * *

"3. In failing to take every, or in fact any, reasonable precaution to avoid collision with the automobile in which plaintiff was riding. * * *"

Appellant specifically denied each of the quoted allegations. In a first affirmative defense, appellant alleged that the proximate cause of the accident was the negligence of the operator of the automobile in which appellee was riding. As a second affirmative defense, appellant alleged that "no claim or demand on the part of [appellee] * * * was made upon, or rejected by, the [appellant] * * * as required in Section 376 of the Charter of the City of Los Angeles," but did not otherwise plead the provisions mentioned.

Appellee offered no evidence that he had presented a claim to appellant. Appellant did not offer the charter provision in evidence. During presentation of appellee's case, he moved to strike the second affirmative defense. The motion was granted. At the conclusion of the evidence appellant moved for a directed verdict, which motion was denied.

The trial court instructed the jury that an automobile in the possession of and driven by a person under the influence of intoxicants was a dangerous instrumentality; and, in effect, that if appellant or its general foreman knew or should have known that Nicoll was addicted to the use of intoxicating liquor and was a reckless driver, appellant was liable for his tortious acts.

The jury returned a verdict for appellee in the sum of $21,904.00 on November 28, 1935. Appellant moved for judgment notwithstanding the verdict about January 2, 1936, and at the same time moved for a new trial. Appellant submitted with the motions an affidavit of one of the jurors disclosing conduct of the jury in its consideration of the verdict, and containing a statement tending to show that the jury had an erroneous conception as to the basis of appellant's liability.

On May 27, 1936, the court below denied the motions and ordered entry of the judgment. The judgment was entered on June 5, 1936. A petition for a stay of execution and fixing the amount of the supersedeas was filed and granted on July 28, 1936. The supersedeas and cost bond on appeal was approved by indorsement of the court below on July 29, 1936. A petition for appeal and order granting the same was filed on September 2, 1936.

Appellee has filed a motion to dismiss the appeal, contending that the judgment must be considered as having been entered on the day the motion for new trial was denied (May 27, 1936), and, therefore, the petition for appeal, filed on September 2, 1936, was filed 6 days too late. The motion, we believe, must be denied for two reasons. First, because "the approval of the appeal bond was, in legal effect, an allowance of the appeal," as said in Crescent Wharf & Warehouse Co. v. Pillsbury, 9 Cir., 93 F.2d 761, January 4, 1938, and, since that approval was made within 90 days, computed from either May 27, 1936, or June 5, 1936. Second, although, under the District Court's rules, a judgment could have been entered prior to the filing of the motion for a new trial or immediately after the denial of that motion, the fact is that it was not so entered. Until it was entered, the 3-month period allowed for taking an appeal did not commence to run. 28 U.S.C.A. § 230.

Appellant contends that the trial court had no jurisdiction over it because it was not subject to suit anywhere but in the county in which it resides. Appellant is subject to be sued the same as any private person. 18 Cal.Jur. 1121, § 366; see, also, 44 C.J. 1453, § 4649.

Section 394 of the California Code of Civil Procedure, as amended by St.1933, p. 1838, provides in part: "Whenever an action * * * is brought against a * * * city, in any county * * * other than that in which the defendant is situated, the action * * * must be, on motion of the said defendant, transferred for trial to a county * * *

other than that, in which the plaintiff * * * resides, * * * and other than the * * * county in which such defendant city is situated. * * * In any such action or proceeding, the parties thereto may, by stipulation in writing, or made in open court, and entered in the minutes, agree upon any county * * * for the place of trial thereof."

There is nothing in the statutes of California requiring an action against a municipality to be brought in a particular court or place. Appellant's contention raises no question of jurisdiction, but one of venue. 27 R.C.L. 783, § 6. Ordinarily a privilege as to venue may be, and is waived, by entering an appearance without claiming the privilege. Lee v. Chesapeake & Ohio Ry., 260 U.S. 653, 655, 43 S.Ct. 230, 231, 67 L.Ed. 443; 27 R.C.L. 783 § 6. The statute quoted confers the privilege, but recognizes that it is subject to waiver, and specifically provides that it may be waived by stipulation. We see no reason for not applying the general rule that it may be waived by entry of appearance and pleading to the merits, and hold that such rule is applicable to municipalities. Therefore any objection to venue was waived by appellant when it pleaded to the merits without raising an objection to venue.

Appellant next contends that the presentment of a claim to the Board of Commissioners of appellant was a condition precedent to suit. Section 376 of the charter of Los Angeles, provides in part: "No suit shall be brought on any claim for money or damages against the City of Los Angeles, or any officer or board of the city, until a demand for the same has been presented, as herein provided, and rejected in whole or in part. * * *"

We regard such a provision as affecting, like a statute of limitations, the remedy and not the right. As such, a requirement as to presentment is controlling only if present in the law of the state where action is brought. See Van Dyke v. Parker, 9 Cir., 83 F.2d 35. It is conceded that there is no law in Nevada making presentment of a claim to appellant a condition precedent to an action. We therefore believe appellant's contention to be untenable.

The next contention relates to the sufficiency of the proof to show that Nicoll was acting within the scope of his employment. Each party inaccurately states the law as we believe it to be.

Ordinarily, one who intrusts his automobile to another is not negligent and is not liable for the negligence of the latter. Annotations: 36 A.L.R. 1137, 1138; 68 A.L.R. 1008, 1009; 100 A.L.R. 920, 921. The rule is based on the decisions which are almost unanimous in holding that an automobile is not ordinarily a dangerous instrumentality. Cadillac Motor Car Co. v. Johnson, 2 Cir., 221 F. 801, 802, L.R.A.1915E, 287, Ann.Cas.1917 E, 581; annotation, 16 A.L.R. 270. Compare District of Columbia v. Colts, 282 U.S. 63, 51 S.Ct. 52, 75 L.Ed. 177; Schweinhaut v. Flaherty, 60 App.D.C. 151, 49 F.2d 533; Williams v. Younghusband, 5 Cir., 57 F.2d 139.

However, if one intrusts his automobile to another, knowing that the latter is an incompetent, reckless, or careless driver, and likely to cause injuries to others in the use of the automobile, the owner is negligent. Annotations: 36 A.L.R. 1137, 1148; 68 A.L.R. 1008, 1013; 100 A.L.R. 920, 923; 5 Am.Jur. 696, § 355; 2 Restatement of the Law of Torts 1058, § 390. The owner, of course, would be liable in such case for any injuries proximately caused by such negligence.

In addition, although the owner may not be negligent in intrusting his automobile to another, he may be liable for his negligence in the operation of the automobile through the person to whom he has intrusted it, if the latter is the agent or servant of the owner. Under the doctrine of respondeat superior, a master is liable for the tortious acts of his servant, if done in the course of the servant's employment, even though such acts may have been done without the knowledge or authority of the master, or in disobedience of the master's orders. Singer Manufacturing Co. v. Rahn, 132 U.S. 518, 522, 10 S.Ct. 175, 33 L.Ed. 440; New Jersey Steamboat Co. v. Brockett, 121 U.S. 637, 645, 7 S.Ct. 1039, 30 L.Ed. 1049; New Orleans M. & C. Railroad Company v. Hanning, 82 U.S. 649, 15 Wall. 649, 657, 21 L. Ed. 220; Philadelphia & Reading Railroad Company v. Derby, 55 U.S. 468, 14 How. 468, 486, 14 L.Ed. 502; Angco v. Standard Oil Co. of California, 9 Cir., 66 F.2d 929, 930; Silverado S. S. Co. v. Prendergast, 9 Cir., 31 F.2d 225; D'Aleria v. Shirey, 9 Cir., 286 F. 523.

 That general rule is applicable to cases where the servant is operating an automobile. As a congener to this rule, it is generally held that the master is not liable for injury or damage resulting from the negligent operation of his car by his servant, while the latter is using it for his own purposes without the owner's permission or consent. Annotations: 22 A.L.R. 1397; 45 A.L.R. 477, 478; 68 A.L.R. 1051, 1052; 80 A.L.R. 725, 726; 5 Blashfield, Cyclopedia of Automobile Law and Practice, Permanent Edition, 157, § 3023. The same rule applies although the master has consented to the use of the automobile by the servant. Annotations: 22 A.L.R. 1397, 1400; 45 A.L.R. 477, 480; 68 A.L. R. 1051, 1053; 80 A.L.R. 725, 727.

 The test as to the existence of liability of the master is stated in 5 Blashfield, supra, 129, § 3005, to be "whether the servant, at the time of the accident, was engaged in furtherance of the master's business or enterprise concerning which he was employed and acting within the scope of his employment."

 In the trial of a case, a party on whom rests the burden of proof (meaning, in its proper sense, the burden of proving the issue in controversy to the degree required therein, the degree varying according to the nature of the case, from preponderance of the evidence to clear and convincing proof), usually introduces some substantial evidence to prove the issues in controversy before resting. The character of this evidence may be such as to bring into operation a procedural rule of law, called a presumption. "It is based, in policy, upon the probative strength, as a matter of reasoning and inference, of the evidentiary fact. * * *" 5 Wigmore on Evidence, 2d Ed., 451, § 2491. In other words, when certain evidentiary facts are before us, resort to reason tells us that the ultimate fact in issue is proved one way or the other; or, in other words, we infer from such evidentiary facts, an ultimate fact. If the evidentiary facts are such as either strongly designate the ultimate fact, or public welfare requires the ultimate fact to be considered as arising as a consequence of those evidentiary facts, a presumption, or procedural rule of law, is applied.

The presumption or procedural rule of law is that the opposing party then has the burden of going forward with the evidence, or, in simple terms, the court, in effect, says to the opposing party: Orderly procedure now requires that you introduce evidence either showing, or from which it may be inferred what, the ultimate fact is; if you fail or refuse to introduce such evidence, you do not comply with the orderly procedure, and as a consequence the ultimate fact will be found to be that which the evidentiary facts now indicate it to be. The "presumption is not the fact itself, nor the inference itself, but the legal consequence attached to it." 5 Wigmore on Evidence, 2d Ed., 451, § 2491. It is only a procedural rule of law, placing on the opponent the burden of going forward with the evidence. 5 Wigmore on Evidence, 2d Ed., 445, 451, 452, §§ 2487, 2491; 1 Jones, Commentaries on Evidence 60, § 31. See also: Del Vecchio v. Bowers, 296 U.S. 280, 285–287, 56 S.Ct. 190, 192, 80 L.Ed. 229.

 If the opposing party complies with the presumption or procedural rule of law, and introduces evidence, the presumption thereafter has no application, or function, and disappears entirely. However, in such instance, the following, from 5 Wigmore on Evidence, 2d Ed., 451, § 2491, is appropriate: " * * * But, the legal consequence being removed, the inference, as a matter of reasoning, may still remain; and a 'presumption of fact,' in the loose sense, is merely an improper term for the rational potency, or probative value, of the evidentiary fact, regarded as not having this necessary legal consequence. 'They are, in truth, but mere arguments,' and 'depend upon their own natural force and efficacy in generating belief or conviction in the mind.' They have no significance so far as affects the duty of one or the other party to produce evidence, because there is no rule of law attached to them, and the jury may give to them whatever force or weight it thinks best—just as it may to other evidence. * * *"

In cases where recovery is sought for injuries sustained as a result of the negligent operation of an automobile by a third person, it frequently happens that the plaintiff proves that defendant was the owner of the automobile, although it was being operated by the third person. In such cases, is the evidentiary fact of ownership of the automobile by defendant, alone, sufficient to raise an inference that the third person was operating the automobile as the agent or servant of defendant and within the scope of his employment?

If so, is a presumption called into operation?

The situation is one productive of discord in the decisions. In many states, it is held that mere proof of ownership of the automobile by defendant is insufficient to support such an inference, and that no presumption exists. The arguments in favor of such rule are well stated in Tice v. Crowder, 119 Kan. 494, 240 P. 964, 42 A.L.R. 893. See, also, annotations: 42 A. L.R. 898, 908; 74 A.L.R. 951, 958; 96 A.L.R. 634, 640; 9 Blashfield, supra, 339, § 6057. Under this rule, proof of ownership, without more, is insufficient to take the case to the jury.

A second rule seems to be that proof of ownership is sufficient to raise such an inference, but that no presumption is brought into operation. Although the decisions in California are inconsistent, this seems to be the latest rule in that state. Pozzobon v. O'Donnell, 1 Cal.App.2d 151, 36 P.2d 236. Under this rule, proof of ownership, without more, is sufficient to take the case to the jury, which may draw the inference if it chooses to do so.

Finally, a third rule is that proof of ownership is sufficient to support an inference, and that a presumption is applicable. This court is committed to that view. D'Aleria v. Shirey, 9 Cir., 286 F. 523.[1] Under this view, proof of ownership, without more, calls into operation the presumption (or procedural rule) which requires submission of evidence as to the ultimate fact by defendant, and if defendant fails to submit such evidence, or such evidence is not submitted by plaintiff, then the court instructs the jury to find that the automobile was being operated by the third person as the agent or servant of defendant and within the course of his employment. The second and third rules differ, only when there is proof of ownership, without more, in that under the former, the jury may draw the inference, but it is not required to do so, and under the latter rule, the jury is required to draw the inference. Foundation Co. v. Henderson, 5 Cir., 264 F. 483.[2]

Under the third rule, if defendant submits evidence as to the ultimate fact, the requirement of the presumption is fulfilled, and it thereafter is inapplicable, or, as stated by some of the authorities, the presumption disappears. The inference, however, is not affected in any way, except as any other fact, by the effect of the evidence adduced, in the jurors' minds.

After presentation of evidence leading to an ultimate fact contrary to the one which may be inferred from proof of ownership, the plaintiff may introduce further evidence leading to the ultimate fact which may be inferred from proof of ownership. Whether plaintiff does or does not, the duty of the trial court with respect to direction of a verdict is the same as in other actions.

One rule is that where "the evidence, with all the inferences that justifiably could be drawn from it, does not constitute a sufficient basis for a verdict for the plaintiff or the defendant, as the case may be, so that such a verdict, if returned, would have to be set aside, the court may and should direct a verdict for the other party." Slocum v. New York Life Insurance Co., 228 U.S. 364, 369, 33 S.Ct. 523, 525, 57 L.Ed. 879, Ann.Cas.1914D, 1029; Gunning v. Cooley, 281 U.S. 90, 93, 50 S. Ct. 231, 232, 74 L.Ed. 720. The amount of evidence which is sufficient to prevent direction of a verdict is not a "mere scintilla of evidence" (Gunning v. Cooley, supra, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720), but substantial evidence. Stated in another way, "Where the evidence upon any issue is all on one side or so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury." Gunning v. Cooley, supra, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720. For example, if a person stole defendant's automobile, operated it negligently and as a result injured plaintiff,

---

[1] Other cases are: Benn v. Forrest, 1 Cir., 213 F. 763, 765; Foundation Co. v. Henderson, 5 Cir., 264 F. 483; Standard Acc. Ins. Co. v. Rivet, 5 Cir., 89 F.2d 74; Silent Automatic Sales Corporation v. Stayton, 8 Cir., 45 F.2d 471, 473; Falstaff Brewing Corporation v. Thompson, 8 Cir., 89 F.2d 557, certiorari denied October 11, 1937, 58 S.Ct. 28, 82 L.Ed. ——;

and see Martin v. Burgess, 5 Cir., 82 F.2d 321.

[2] Generally, for cases on the second and third rules, see: Young v. Masci, 289 U. S. 253, 259, 53 S.Ct. 599, 601, 77 L.Ed. 1158, 88 A.L.R. 170; annotations: 42 A. L.R. 898, 900; 74 A.L.R. 951; 96 A.L.R. 634, 635.

common sense dictates that an inference from proof of ownership by defendant could not be taken when other evidence proved that the person had stolen defendant's automobile. Accordingly, it has been held that where the evidence, as stated in Gunning v. Cooley, supra, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720, "is all on one side or so overwhelmingly on one side as to leave no room to doubt what the fact is," the court should direct a verdict. Martin v. Burgess, 5 Cir., 82 F.2d 321; Standard Acc. Ins. Co. v. Rivet, 5 Cir., 89 F.2d 74; compare Pemberton v. Morris Fertilizer Co., 5 Cir., 287 F. 517.

Another rule is stated in Best v. District of Columbia, 291 U.S. 411, 415, 54 S. Ct. 487, 489, 78 L.Ed. 882: "Where uncertainty arises either from a conflict of testimony or because the facts being undisputed, fair-minded men may honestly draw different conclusions from them, the question is not one of law, but of fact to be settled by the jury." Thus if there was evidence that the operator of the automobile stole it from defendant, which evidence conflicted with other evidence that the operator did not steal it, but was using the automobile on defendant's business, the question must be presented to the jury for determination. Accordingly, it is stated in Gunning v. Cooley, supra, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720, that where a determination depends "on the credibility of witnesses, and the effect or weight of evidence," such determination is to be made by a jury. D'Aleria v. Shirey, 9 Cir., 286 F. 523; Benn v. Forrest, 1 Cir., 213 F. 763, 765; compare Silent Automatic Sales Corporation v. Stayton, 8 Cir., 45 F.2d 471.

It would seem that these same rules would be applicable under the second rule above mentioned. See Hawthorne v. Eckerson Co., 2 Cir., 77 F.2d 844, 845 and Woody v. Utah Power & Light Co., 10 Cir., 54 F.2d 220, which, although not adopting either the second or third rule, apply the second rule.

In the instant case, appellant presented evidence on the issue of what Nicoll was actually doing at the time of the accident, thus removing itself from the consequences of a compulsory finding against it, pursuant to the presumption. Without relating the evidence we say that in our opinion the evidence was so overwhelmingly to the effect that Nicoll was not acting in furtherance of appellant's business, as to leave no room to doubt that fact. The verdict cannot, we believe, be sustained on that ground.

Appellee contends, however, that the verdict may be sustained on the ground that appellant was negligent in providing Nicoll with an automobile knowing that he was addicted to the use of alcohol. Appellant contends that such ground was not in issue because not properly pleaded, and, even if it was in issue, there was no evidence to support the charge.

The allegations are that appellant intrusted its automobile to Nicoll, knowing that Nicoll "was a careless, reckless and incompetent driver * * * and was addicted to the excessive use of intoxicating liquor." Under the authorities above cited, the intrusting of the automobile under such circumstances was negligence. It was also alleged that appellee's injuries were sustained as a result of a collision caused by appellant's negligence, consisting, "among other things," of its failure to keep its automobile under proper and reasonable control and its failure to take reasonable precautions to avoid collision. One of the "other things" referred to was the alleged negligence of appellant in permitting its automobile to be operated by a driver whom it knew to be careless, reckless, incompetent, and addicted to the excessive use of intoxicating liquor. Thus appellee pleaded, not only that appellant's employee was negligent, but that appellant also was negligent, and that, as a proximate result thereof, appellee suffered damages. That is sufficient. It is conceded that appellee could plead more than one negligent act, so the fact that he also pleaded liability under the doctrine of respondeat superior does not prevent recovery under the other negligent act.

Witness Flukey for appellee was asked if he knew the general reputation of Nicoll in the community for drunkenness or sobriety. He replied that he did, and that Nicoll "was well known for drunkenness." He also testified that Nicoll's general reputation was that he was a reckless driver. Witness Lewis testified to the same effect. In addition, witness Faxon for appellee testified that he had seen a general foreman of appellant, in a roadhouse he operated, drinking whisky, several times, and that he had seen Nicoll drunk in the presence of the foreman. For appellant there was testimony that such foreman had no supervision of Nicoll. Witness Lewis also testified

586

that she saw an official of appellant go into the same roadhouse mentioned and say to Nicoll: "Where have you been the last day or two—drunk again? Get to work or you will be fired." Nicoll denied most of these statements.

The evidence was pertinent and objections thereto were properly overruled. It was sufficient if believed to support a verdict for appellee.

Appellant also contends that the verdict was excessive. Although it was held in Southern Ry. Co. v. Montgomery, 5 Cir., 46 F.2d 990, 991, that a Circuit Court of Appeals has "no jurisdiction to correct a verdict because it is excessive," the rule in this court is that the refusal to grant a new trial is "such an abuse of discretion as is reviewable by this court" where the verdict is "grossly excessive." Cobb v. Lepisto, 9 Cir., 6 F.2d 128, 129. See, also, W. T. Rawleigh Co. v. Shoultz, 3 Cir., 56 F.2d 148. Compare Louisville & Nash. R. Co. v. Holloway, 246 U.S. 525, 529, 38 S.Ct. 379, 62 L.Ed. 867; Fairmount Glass Works v. Coal Co., 287 U.S. 474, 481, 485, 53 S.Ct. 252, 254, 77 L.Ed. 439.

Before the accident appellee's health was good. He sustained a comminuted fracture of the first lumbar vertebra. He was placed in a cast which extended from the shoulder blades to the hips. He was confined to the hospital for 2 months, and required considerable medical attention thereafter. After the cast was taken off, he wore a brace for about 5 months. At the time of the trial the fractured vertebra had become ankylosed with the vertebra immediately above, and the one immediately below it. One physician testified that appellee would never be able to do any heavy work. Another physician testified that for "doing very light work, his disability is very little; for doing very heavy work, it is a great deal."

Appellee had completed grade school, high school, and 2 years of graded college work which consisted of drafting, mechanical and architectural engineering. He was a carpenter and building engineer. He testified that his "average earnings from 1925 down to the time of the accident" were about $8 per day. His expectancy at the time of the accident was 38.12 years, he being at that time 26 years old.

Upon this record, we are unable to say that the verdict was so grossly excessive that the trial court abused its discretion in refusing a new trial.

Appellant also complains of the refusal of the trial court to give an instruction requested by appellant. The requested instruction was substantially given in other parts of the charge.

Finally, appellant contends that a new trial should be granted because the jury misconceived the basis of appellant's liability. To show such alleged misconception, appellant relies on an affidavit of one of the jurors. However, the general rule that the testimony of jurors cannot be used to impeach their verdict is applicable here. Hyde v. United States, 225 U.S. 347, 384, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614; McDonald v. Pless, 238 U.S. 264, 269, 35 S.Ct. 783, 59 L.Ed. 1300; Clark v. United States, 289 U.S. 1, 18, 53 S.Ct. 465, 470, 77 L.Ed. 993; Moore v. United States, 9 Cir., 1 F.2d 839, 841; Lancaster v. United States, 5 Cir., 39 F.2d 30, 33; Davis v. United States, 5 Cir., 47 F.2d 1071, 1072; Williams v. United States, 6 Cir., 3 F.2d 933, 936; Ramsey v. United States, 6 Cir., 27 F.2d 502, 504; Stout v. United States, 8 Cir., 227 F. 799, 804; Stewart v. United States, 8 Cir., 300 F. 769, 788; Barry v. Legler, 8 Cir., 39 F.2d 297, 302; Manhattan Oil Co. v. Mosby, 8 Cir., 72 F.2d 840, 847; Economon v. Barry-Pate Motor Co., 55 App.D.C. 143, 3 F.2d 84, 86; Jordon v. United States, 66 App.D.C. 309, 87 F.2d 64, 67.

Affirmed.

MATHEWS, Circuit Judge, concurs in the result.