**WATSON v. UNITED STATES.**

No. A–5884.

United States District Court
Territory of Alaska,
Third Division.

May 26, 1950.

Bailey E. Bell, Anchorage, Alaska, for plaintiff.

J. Earl Cooper, United States Attorney, Ralph E. Moody, Assistant United States Attorney, Anchorage, Alaska, Gerald F. McLaughlin, Assistant United States Attorney, Davis & Renfrew, Anchorage, Alaska, for defendant.

DIMOND, District Judge.

This action was brought by the plaintiff under the Federal Tort Claims Act, Title 28, U.S.C.A. § 1346(b), for injuries the plaintiff claims to have received when struck by a bus on the Fort Richardson Military Reservation near Anchorage, Alaska.

The Act provides in part as follows: "(b) Subject to the provisions of chapter 171 of this title, the district courts, together with the District Court for the Territory of Alaska, the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

The proof shows that the plaintiff on the day of the injury was employed by the United States Government, and was working in a laundry of the Military Hospital. From her living quarters, provided by the Army on the Fort Richardson Military Reservation, she was transported to her place of work and return by Army buses driven by soldiers.

On the day in question, September 29, 1949, the plaintiff proceeded from her quarters to the regular bus stop at the Civilian Cafeteria, in accordance with the usual custom and practice, in order there to secure a bus on which to ride to the hospital. While waiting for the bus, another bus, in size, shape, color and every detail of appearance corresponding with the Army buses in which civilians were carried from place to place on the Post, and driven by a man in some type of Army uniform, backed into her, throwing her violently to the ground and causing, as plaintiff avers, the injuries of which she complains. Neither the plaintiff, nor any of the bystanders, so far as known, recognized the driver of the bus which struck the plaintiff, nor was the number of the vehicle noted, or recorded. A witness for the plaintiff testified at the trial that after the plaintiff had been struck and knocked to the ground the driver of the bus stated that he would report the accident to the Motor Pool, that being the place from which Post buses were routed and assigned to certain work. No report was made to the Motor Pool, and the witness so testifying for the plaintiff said he saw the driver only once thereafter, and that the driver then inquired as to the injuries of the plaintiff. Neither the plaintiff, nor the defendant produced any evidence as to the identity of the driver, or as to the identity of the bus, except generally as herein recited.

Fort Richardson Military Reservation is an area of considerable extent. It houses hundreds, if not thousands, of troops and many civilians are employed there from time to time for construction work and

for the housekeeping work of the Post. The entire Post area is under the usual military discipline and direction, and it is difficult to conceive of any activities being carried on within the boundaries of the Post except by the order and with the knowledge of the officers in charge, or their subordinates. By circumstantial evidence, the conclusion is inescapable that the bus which struck and injured the plaintiff was a United States Government Bus and was driven by a soldier at the time of the collision.

Recently in the case of Ruth Radomsky v. United States of America, 180 F.2d 780, 783, the Court of Appeals for the Ninth Circuit had occasion to restate the elements of circumstantial evidence in the following language: "Circumstantial evidence is that which establishes the fact to be proved only through inference based on human experience that a certain circumstance is usually present when another certain circumstance or set of circumstances is present." Considering all the circumstances of this case, the nature of the Military Reservation, the customary strict and rigid military control of all the activities carried on on the Reservation, the fact that the bus which did the damage was, in all appearances, a Government bus and the man who drove it was dressed in the uniform of a soldier, even though a fatigue uniform, leads inescapably to the other "set of circumstances" namely, that the bus was a government bus and was driven by a soldier. In any event, the conclusion is virtually unavoidable that the bus was owned and operated by the United States Government, and was then driven by an employee of that government.

Under the Federal Tort Claims Act, to fix liability upon the United States, it is also necessary that the employee be acting within the scope of his employment at the time the injury occurs. The plaintiff asserts that she did not know the name of the driver of the bus, where it had come from, where it was going, or on what mission. Nor was any proof on these points offered by the government. The government disclaimed all knowledge of the bus and of the identity of its driver and of the work, if any, it was engaged in at the time of the accident. However, the conclusion that the bus is owned and operated by the United States Government, and was driven by an employee of that government brings into force the rule announced by the Court of Appeals for the Ninth Circuit, in the case of the Department of Water and Power v. Anderson, 95 F.2d 577, 584, from which the following is quoted:

"(21) Finally, a third rule is that proof of ownership is sufficient to support an inference, and that a presumption is applicable. This court is committed to that view. D'Aleria v. Shirey, 9 Cir., 286 F. 523. Under this view, proof of ownership, without more, calls into operation the presumption (or procedural rule) which requires submission of evidence as to the ultimate fact by defendant, and if defendant fails to submit such evidence, or such evidence is not submitted by plaintiff, then the court instructs the jury to find that the automobile was being operated by the third person as the agent or servant of defendant and within the course of his employment."

"Under the third rule, if defendant submits evidence as to the ultimate fact, the requirement of the presumption is fulfilled, and it thereafter is inapplicable, or, as stated by some of the authorities, the presumption disappears. The inference, however, is not affected in any way, except as any other fact, by the effect of the evidence adduced, in the jurors' minds."

While courts may dispute whether, under such circumstances, the final conclusion is the result of inference or of presumption, it is plain that in the Anderson case the theory of presumption from the fact of ownership was there definitely asserted and established. It is true, of course, that the presumption is only a procedural rule which can be overturned by evidence, but in the case at bar no evidence was offered by either plaintiff or defendant even remotely tending to negative the presumption. Even if there be no presumption, the strong inference still remains that the driver of the bus was an employee

of the government, and was acting within the scope of his employment.

It should be noted that the doctrine set forth in Department of Water and Power v. Anderson, supra, was pronounced by the court before the opinion of the Supreme Court of the United States in the case of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and, hence, before the Circuit Court was bound by state legislation. It is, therefore, the rule which the court preferred, and the rule which should be followed by this Alaska court. There is, moreover, no Alaskan decision or statute establishing a contrary doctrine.

Further, it should be noted that the majority of the cases hold that the ownership of the automobile is prima facie evidence of responsibility by the owner for the negligence of the person operating, although there is a conflict as to whether that conclusion results from the presumption announced in the Anderson case, supra, or is a result of an inference. Nor is there anything to the contrary in the case of Long v. United States, D.C.S.D. Cal.1948, 78 F.Supp. 35, or in Murphey v. United States, D.C.N.D.Cal.1948, 79 F. Supp. 925.

Cases in some respects comparable to the one here under consideration are those involving motor vehicles having the name of a firm or individual painted on the side. Most of these cases hold that when such is the circumstance, a presumption arises that the vehicle is owned by the one whose name so appears, that it is being driven on necessary business of the owner, and that the driver is acting within the scope of his employment. Simon v. City Cab Co., 1935, 64 App.D.C. 364, 78 F.2d 506; Liberty Baking Co. v. Kellum, 3 Cir., 1935, 79 F.2d 931; Sefton v. Valley Dairy Co., 1942, 345 Pa. 324, 28 A.2d 313.

In Empire Gas and Fuel Co. v. Muegge, 1940, 135 Tex. 520, 143 S.W.2d 763, the court held that the fact that registration was in defendant's name gave rise to the presumption that he owned the vehicle and this presumption together with evidence that the driver was in his employ, would support a presumption that the driver was acting within the scope of his employment.

Accordingly, I find that the plaintiff was injured by a bus driven by an employee of the government then acting within the scope of his employment.

The more difficult problem still confronts us and that is the determination of the amount which ought to be awarded to the plaintiff by reason of the injuries she so sustained.

[5] The evidence shows that X-rays of plaintiff taken shortly after the accident showed abnormalities of the vertabrae indicating an arthritic condition of the spine. The testimony of a physician indicated that she was afflicted with what is called hypertrophic arthritis. The plaintiff testified that before she received the injuries out of which this action arose, she had suffered no pain from the diseased condition of the spine; that she had been examined by a physician at Fort Richardson before entering employment there; and that she had worked steadily and readily without experiencing any pain or suffering whatever. Testimony adduced during the trial was to the effect that the injuries sustained by plaintiff by being struck by the bus probably tended to "aggravate" or "exacerbate" the arthritic condition then existing so as to bring the pain she experienced shortly after the injury and which continued, as she asserted, until the date of the trial, despite hospitalization and suitable treatment. The evidence further indicated that the malformation of the bones of the spine was such as to render complete cure improbable although there was no conclusive testimony as to whether or not the plaintiff would secure temporary relief from medical treatment.

Unless the plaintiff's sufferings are imaginary or pretended, it is questionable whether she will ever again be able to undertake regular employment. Indeed it seems quite probable that even if the pain leaves her she will not be able to find employment anywhere from any one who knows of her precise physical condition,

·and particularly, the arthritic deformities ·of the vertebrae.

The problem as to the award of compensation arises from the fact that the condition of the spine, so far as revealed by X-ray pictures, existed at the time of the injury and that the injury did not cause the malformation of the bones but only brought on the pain through bruising the tissues or straining the ligaments or some other traumatic change which might have caused the pain and· suffering since ·endured by the plaintiff. Without discussing in detail all of the possibilities which may be thought of in connection with the subject, I find that the plaintiff has sustained .complete, although temporary loss of earning capacity, and probably permanent partial disability, and that she is entitled to a substantial sum, but, of course, not nearly as much as she ought to receive had the disease itself been caused by the injuries sustained on September 29, 1949. I find that a fair allowance for the plaintiff under the Tort Claims Act would be the sum of $13,000.00.

` Findings of fact and conclusions of law and decree may be prepared and submitted accordingly.