RUTH JOHNSON, PRO AMI

*vs.*

AMERICAN AUTOMOBILE INSURANCE COMPANY.

Androscoggin.        Opinion July 22, 1932.

*Berman & Berman,* for plaintiff.
*Skelton & Mahon,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, JJ.

DUNN, J.   The defendant is a corporation writing liability insurance on automobiles. It executed and delivered to James F. Becker, a policy covering his car. On June 6, 1931, while this policy was in force and effect, George Benson Rix, an employee of Mr. Becker, crashed the automobile into a telephone pole, to the consequent physical injury of the plaintiff, a young woman who was riding gratuitously in the vehicle. She brought an action in tort against the automobile driver; judgment was entered on a verdict for $1,800, with taxable costs. This judgment remaining unsatisfied for twenty days, the creditor — the present plaintiff — sued in equity, to reach and apply the insurance money, in the amount of her judgment. R. S., Chap. 60, Sec. 178 et seq. The cause was heard on bill, answer, replication and proof. The bill was decreed dismissed. The plaintiff appealed.

The appeal, as argued, is reduced to the single question: Was the automobile, at the time of the accident, being operated, within the scope of the "extended coverage" clause in the liability policy, "with the consent of such named Assured," (*i.e.,* the consent of the owner of the automobile)?

The "extended coverage" clause reads:

"That in addition to the Assured named in this policy, such insurance as is granted hereunder shall be available, in the same manner and under the same conditions and to the same extent as it is available to such named Assured, to any person or persons while riding in or legally operating the automobile covered by this policy, and to any person, firm or corporation legally responsible for the operation thereof; but only while it is being used . . . with the consent of such named Assured, . . ."

Rix, the employee, had been told, around half past eight in the morning, to drive the car to his home — the approximate distance of a mile — there wash and polish it, and bring it back "about 11:30 at the latest."

He drove the car home and washed it. But, he testified, it could not be polished until dry; and as he thought it would dry more rapidly in motion than when idle, he drove three and one-half miles, still farther in opposite direction from his employer's, to his aunt's house; and thence to a neighbor's, where he was asked to take the plaintiff to Lewiston to do an errand. He did so, the injury taking place on the way back. The employer knew nothing of the trip until afterward.

The accident, it was testified, occurred at 11:15 o'clock. There was not then remaining time, even had there been no mishap, for the employee to have taken the plaintiff to her home, returned to his own, polished the car, and been at his employer's at half past eleven.

The Justice below found the fact to be that, on the ride involving the collision, the automobile was not being used with the consent, express or implied, of the "named Assured," but that the employee was using it in disregard of, and unrelation to, the specified object for which it had been intrusted to him.

Evidence abundantly sustains the finding. The trial court concluded, as a matter of law, that Rix was not covered by the terms of the policy, as to the accident.

Plaintiff's counsel cite, as supporting the appeal, the cases of *Dickinson* v. *Maryland Casualty Co.*, 101 Conn., 369, 125 Atl., 866; *Stovall* v. *New York Indemnity Co.* (157 Tenn., 301), 8 S. W. (2d), 473; *American Automobile Insurance Co.* v. *Jones* (163 Tenn., 605), 45 S. W. (2d), 52; *Peterson* v. *Maloney* (181 Minn., 437), 232 N. W., 790; *Holton* v. *Eagle Indemnity Co.* (196 N. C., 348), 145 S. E., 679; *Maryland Casualty Co.* v. *Ronan*, 37 Fed. (2d), 449; *Odden* v. *Union Indemnity Co.* (156 Wash., 10), 286 Pac., 59.

In the Dickinson Case, it was held (but not with full concurrence), that slight deviations from route and purpose, by one who had the use of a car to go home and change his clothes, and hurry

back, did not destroy the insurer's liability. The deviations consisted in driving to a saloon, and taking in passengers; thence a mile farther away to another saloon; and on to a third. The driver, being doubtful if he still had time to carry out his original plan, then started toward a place where he could see the city clock. Due solely to his negligence, the car skidded, striking a tree, and one of the passengers was mortally hurt.

Somewhat broadly stated, the Stovall Case extends the protection of the "omnibus" clause, not only to the taking and use of the car at the outset, but also to the particular use at the time in question.

The facts were these. A salesman employed by a dry goods concern of Memphis, Tennessee, was attending a convention in that city. A car belonging to the firm, which had been assigned to him, for business only, in his Mississippi territory, but which was forbidden to him for his own use, he brought to Memphis, and stored in the name of his employer, in a public garage. The claim check for the car, he delivered to his superior officer, the sales manager. On the closing day of the convention, the salesman obtained the check from the manager, got the car, and carried certain customers of the firm to the railroad station. After returning the car to the garage, he did not turn in the check at the store, as he should have done; nor was he asked for it.

During the afternoon, he "slipped off" without the knowledge of his employer (the employee testified that had he asked for leave, it would not have been granted), went to the garage, presented the check, removed the automobile, and started for Sardis, Mississippi, to visit his fiancee. On the road, he negligently inflicted actionable damage. The opinion interprets the words, "providing such use or operation (of the insured automobile) is with the permission of the named Assured," as excluding, by intention, a person whose primary taking of the car was unauthorized, rather than one who, having been given the use of the car, subsequently drove it to a place, or for a purpose, not within the contemplation of the owner, when he parted with its possession. The retention of the claim check, after the trip to the railroad station, was regarded as a retention of the constructive possession of the automobile itself.

In so far as departure by a salesman, from prescribed route, was relied on for a reversal of judgment, the Jones case affirms the Stovall Case.

*Peterson* v. *Maloney*, decides that only permission to take and use the car in the first instance, need have been given. In that case, the defendant had requested, and been allowed the use of the machine, to see his mother and doctor. Instead, he went some twelve miles away, for other personal purposes. The court held that, in the absence of restriction or qualification, except as embodied in the request, the change of purpose did not, in relation to insurance protection, annul the character of the use of the vehicle.

Without discussing other cases, thus was it concluded that, initial use of the car having been with the owner's permission, or consent, liability insurance became available.

Touching the question here presented, the cited decisions are not persuasive.

It is the general rule that if the language of an insurance policy is ambiguous, or susceptible of interpretations differing in import, construction should be most strongly against the insurer, on whom the obligation of the contract rests, and who is supposed to have chosen the wording. *Barnes* v. *Dirigo, etc., Ins. Co.*, 122 Me., 486, 120 A., 675.

Another rule, which safeguards the first against any abuse of its application, is this: If the terms of the policy present no ambiguity, they are to be taken and understood, as a usual thing, according to their plain and ordinary sense. *Imperial, etc., Ins. Co.* v. *Coos County*, 151 U. S., 452, 38 Law ed., 231; *Cushman* v. *Northwestern Ins. Co.*, 34 Me., 487; *Dunning* v. *Mass., etc., Assn.*, 99 Me., 390, 59 A., 535. Parties contracting in writing are supposed to have the intentions which their agreement effectually manifests. *Richardson* v. *Maine Ins. Co.*, 46 Me., 394; *Hathorn* v. *Hinds*, 69 Me., 326; *Union Water Power Co.* v. *Lewiston*, 101 Me., 564, 65 A., 67.

True, literalism should not be pushed to the length of frustrating, in whole or in part, the general intention the contract evidences; nor, on the other hand, should words be made to mean what they do not really say. A contract should be so construed as to give it only such effect as was intended when it was made. Astute

and subtle distinctions should not be attempted, to take a plain case from the operation of material bounds. *Mack* v. *Rochester, etc., Ins. Co.*, 106 N. Y., 560; 13 N. E., 343; *Lyman* v. *State, etc., Ins. Co.*, 14 Allen, 329.

In the instant case, the instruction by the employer, that Rix take the car home and wash it, was simply consent that the car be used, within reasonable and incidental limits, for that purpose. Such use brought the employee within the additional coverage clause in the liability policy. If, while consent continued, civil liability for damages had been incurred, the policy would have afforded security.

But, as the Justice found — and his finding has the weight of a jury verdict — the car was not, when the employee's guest was injured, "being used with the consent of the named Assured." The plaintiff could not, therefore, avail herself of the insurance.

The phrase "while being used," has been construed as referring to the time of casualty, and not to the time of granting consent. *Johnston* v. *New Amsterdam Casualty Co.* (200 N. C., 763), 158 S. E., 473. Permission to use an automobile to attend a funeral was not inclusive of a pleasure trip. *Frederiksen* v. *Employers' Liability Assur. Corp., Ltd.*, 26 Fed. (2d), 76. Express permission for one purpose did not imply all purposes. *Trotter* v. *Union Indemnity Co.*, 35 Fed. (2d), 104. A liability policy did not cover an automobile which was being used by insured's employee on his own business, without permission. *Denny* v. *Royal Indemnity Co.* (26 Ohio App., 566), 159 N. E., 107.

The terms of a policy cannot be enlarged or diminished by judicial construction. *Denny* v. *Royal Indemnity Co.*, supra. The function of the court is not to make a new contract, but to ascertain the meaning and intention of that actually made.

*Appeal dismissed.*
*Decree below affirmed.*