1999 ME 87

**FOUNDATION FOR BLOOD RESEARCH**

v.

**ST. PAUL MARINE AND FIRE INSURANCE CO.**

Supreme Judicial Court of Maine.

Argued May 5, 1999.

Decided June 3, 1999.

James B. Haddow, (orally), Petruccelli & Martin, LLP, Portland, for plaintiff.

James D. Poliquin, (orally), Norman, Hanson & DeTroy, LLC, Portland, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] The United States District Court for the District of Maine (*Carter, J.*), acting pursuant to 4 M.R.S.A. § 57 (1989) and M.R. Civ. P. 76B, has certified the following question to this Court:

> Does a duty to defend exist under the legal "comparison test" in the context of the "advertising injury" or "personal injury" provisions of the General Liability Policy issued by St. Paul for an underlying third-party complaint which asserts claims of inducing patent infringement when the complaint is devoid of any concrete factual allegations describing the circumstances of the alleged injury?

[¶ 2] St. Paul issued a commercial general liability policy to the Foundation for Blood Research (FBR), a Maine corporation, which policy was effective from October 5, 1996 to October 5, 1997. In December 1996, the Biomedical Patent Management Corporation (BPMC) filed a complaint against FBR in the United States District Court for the Northern District of California. The complaint asserted, among other claims, inducement of patent infringement.

[¶ 3] FBR furnished the complaint to St. Paul in a timely fashion and demanded that St. Paul provide a defense. St. Paul responded that it had no duty to defend or indemnify FBR and refused the demand. FBR eventually settled the lawsuit with BPMC and filed the action against St. Paul for breach of contract in the United States District Court for the District of Maine. The parties agree that Maine law governs this case.

[¶ 4] It is black letter law in this State that an insurer's duty to defend is determined by comparing the allegations in the underlying complaint with the provisions of the insurance policy. *See Gibson v. Farm Family Mut. Ins. Co.*, 673 A.2d 1350, 1352 (Me.1996). This is the "comparison test." If the underlying complaint discloses a potential or a possibility for liability within the coverage of the policy, the insurer has a duty to defend. *See id; Travelers Indem. Co. v. Dingwell,* 414 A.2d 220, 227 (Me.1980).

[¶ 5] A crucial step in a duty to defend case is the examination of the underlying complaint. The complaint filed against FBR states:

7. On 25 February 1992, United States Patent 4,874,693 ("the '693 Patent"), entitled "Method for assessing placental dysfunction," was duly and legally issued to Mark Bogart, Ph.D. By assignment, Plaintiff now owns and holds all rights to enforce the '693 patent, and is solely entitled to recover for all past, present and future acts of infringement. A true and correct copy of the '693 patent is attached hereto as Exhibit 1.

8. Defendant performs diagnostic services which infringe and are continuing to infringe the '693 patent.

9. On information and belief, Plaintiff alleges that prior to Defendant's acts of infringement, it was aware of the '693 patent and its application to the services performed by Defendant. On information and belief, therefore, Defendant's infringement is willful, making this an exceptional case entitling Plaintiff to treble damages and attorneys fees.

10. Defendant's infringement of Plaintiff's exclusive rights under the '693 patent is damaging and will continue to damage Plaintiff's business, causing irreparable harm for which there is no adequate remedy at law. Defendant's infringement will continue unless enjoined by this Court.

11. Plaintiff has been injured by Defendant's infringing acts in an amount not yet determinable. Plaintiff seeks a reasonable royalty and other forms of monetary damages.

*   *   *   *   *   *

### CLAIM THREE—INDUCING LITERAL PATENT INFRINGEMENT

16. For its third claim, Plaintiff incorporates herein paragraphs 1 through 11, inclusive.

17. Defendant has induced the literal infringement of the '693 patent by intentionally causing other persons to perform acts which constitute literal infringement of the '693 patent, despite Defendant's actual knowledge that such acts constitute literal infringement [of] the '693 patent.

The complaint contains three other claims: literal patent infringement; patent infringement under the doctrine of equivalents; and inducing patent infringement under the doctrine of equivalents.

[¶ 6] As the federal court notes in its certified question "the complaint is devoid of any concrete factual allegations describing the circumstances of the alleged injury." The lack of concrete allegations in the underlying complaint, however, is not fatal to a duty to defend claim. *See Dingwell*, 414 A.2d at 227. For example, when an underlying complaint states in general and simple terms that the defendant negligently operated a motor vehicle and thereby caused injury to the plaintiff, a negligence claim is stated even though there are no concrete factual allegations concerning the circumstances of the negligence. Even without the concrete factual allegations a court can compare the complaint with the motorist's automobile insurance policy to see if negligence while operating is a covered occurrence. In the case at hand, even though there are no concrete factual allegations regarding the inducement of patent infringement, there is enough in the complaint to apprise any reader that there is a claim of inducing patent infringement.

[¶ 7] A further step in a duty to defend case is the examination of the insurance policy to determine if there is coverage for the claim. This insurance policy does not expressly include coverage for inducement of patent infringement. In fact, the policy makes no mention whatsoever of patent infringement or inducing patent infringement. The only provisions of the policy that arguably include coverage are those for "personal injury" and "advertising injury:"

**Personal injury liability.** We'll pay amounts any protected person is legally required to pay as damages for covered personal injury that:

results from your business activities, other than advertising, broadcasting, publishing or telecasting done by or for you; and

is caused by a personal injury offense committed while this agreement is in effect.

**Advertising injury liability.** We'll pay amounts any protected person is legally required to pay as damages for covered advertising injury that:

results from the advertising of your products, work or completed work; and

is caused by an advertising injury offense committed while this agreement is in effect.

The policy also contains the following definitions:

*Personal injury* means injury, other than bodily injury or advertising injury, caused by a personal injury offense.

*Personal injury offense* means any of the following offenses:

- False arrest, detention or imprisonment.
- Malicious prosecution.
- Wrongful entry or wrongful eviction.
- Invasion of the right of private occupancy of a room, dwelling or premises that a person occupies.
- Libel or slander.
- Making known to any person or organization written or spoken material that belittles the products, work or completed work of others.
- Making known to any person or organization written or spoken material that violates an individual's right of privacy.
- Interfering with the rights provided to a person by a Patients' Bill of Rights or any similar law.

*Advertising injury* means injury, other than bodily or personal injury, caused by an advertising injury offense.

*Advertising injury offense* means any of the following offenses:

- Libel or slander.

• Making known to any person or organization written or spoken material that belittles the products, work or completed work of others.

• Making known to any person or organization written or spoken material that violates an individual's right of privacy.

• Unauthorized taking or use of any advertising idea, material, slogan or title of others.

This policy also includes a statement that St. Paul will defend the insured against "any claim or suit for covered injury or damage ."

▋ [¶ 8] The claim of inducing patent infringement is a statutory claim. One who induces another to infringe a patent is liable to the patentee. The statute specifically states: "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b) (1994). A plaintiff who claims that a defendant induced patent infringement must prove two elements: (1) the defendant knowingly induced a third party to infringe; and (2) the third party actually infringed the patent. *See H.B. Fuller Co. v. National Starch and Chem. Corp.*, 689 F.Supp. 923, 943 (D.Minn.1988). Inducing patent infringement can be committed by conduct "as broad in scope as the range of actions by which one may cause, urge, encourage or aid another to infringe." *Burlington Indus., Inc. v. Exxon Corp.*, 379 F.Supp. 754, 757 (D.Md.1974). Thus, there are numerous possible ways of inducing patent infringement. For example, a defendant could tell a third party that a particular device was so obvious that it was not patentable or that any patent on it was invalid. If that third party then produced that device without license from the patentee, the defendant could be liable for inducement of patent infringement.

▋ [¶ 9] In this case St. Paul obligated itself in the policy to defend FBR when a personal injury offense or an advertising injury offense causes injury. A "personal injury offense" is defined in part as "making known to any person or organization written or spoken material that belittles the products, work or completed work of others." A "personal injury offense" must result from the insured's business activities. An "advertising injury offense" is similarly defined in part as "making known to any person or organization written or spoken material that belittles the products, work or completed work of others," but it must arise from an advertising activity. From these definitions it would seem that any acts of FBR, from either its business activities or its advertising activities, which belittled a product of another and which then led a third party to infringe the patent would be covered.

▋ [¶ 10] There is some dispute as to what "belittle" means. FBR argues that the ordinary or dictionary definition of "belittle" is applicable. A dictionary definition of "belittle" is: "1. To represent or speak of as small or unimportant; disparage. 2. To cause to seem less or little." THE AMERICAN HERITAGE DICTIONARY 169 (2d coll. ed.1982). St. Paul contends that the word refers to the tort of belittlement. Belittlement is one of several terms for the tort commonly known as trade libel. *See Microtec Research, Inc. v. Nationwide Mut. Ins. Co.*, 40 F.3d 968, 972 (9th Cir. 1994).[1] St. Paul argues that because the offense of "making known to any person or organization written or spoken material that belittles the products, work or completed work of others" is included in a list that contains other torts, such as libel and slander, "belittle" must be interpreted to refer to the tort of belittlement. The list

---

1. Other variations on the name of the tort include disparagement of property, slander of goods, and commercial disparagement. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 128, at 963 (5th ed.1984). The elements of trade libel are generally published by the defendant of the disparaging words, falsity, malice, lack of privilege, and special damages. *See* Annotation, *Disparagement of the Quality of Intangible Property*, 74 A.L.R.3d 298, 301 (1976).

of "offenses," however, does not use the term "tort," and with the possible exception of "libel" and "malicious prosecution" the list uses phrases with common words easily understood by nonlawyers.

[¶ 11] The use of the term "belittle" in this insurance policy has two possible interpretations. A policy is ambiguous if it is reasonably susceptible of differing interpretations. *See Apgar v. Commercial Union Ins. Co.*, 683 A.2d 497, 498 (Me.1996) (citation omitted). In determining whether the contract is ambiguous, it is evaluated as a whole and must be construed in accordance with the intention of the parties. *See id.* (citation omitted). When applying these rules of construction, we view the language from the perspective of an average person, untrained in either the law or insurance. *See Peerless Ins. Co. v. Wood*, 685 A.2d 1173, 1174 (Me. 1996). It is unlikely that an average person, or even most lawyers, would interpret the word "belittle" to mean the archaic tort of belittlement.[2] Thus, to most people the meaning would be the ordinary meaning "to make little of." *See St. Paul Fire & Marine Ins. Co. v. Medical X–Ray Ctr., P.C.*, 146 F.3d 593, 595 (8th Cir.1998) (holding "belittles" not limited to belittlement under South Dakota law); *but see Microtec Research*, 40 F.3d at 972 (holding "belittle" means trade libel).

[¶ 12] We have often said that "[i]nsurance policies are liberally construed by the court in favor of the insured and any ambi-guity in the contract is resolved against the insurer." *Wood*, 685 A.2d at 1174 (citation omitted). Therefore, we interpret the term "belittle" in its ordinary meaning, and we do not confine its meaning to the tort of belittlement.

[¶ 13] It is possible that FBR induced patent infringement by belittling to a third party the patent belonging to BPMC. When we compare the underlying complaint to the terms of the insurance policy, we find "the complaint could give rise to any set of facts that would establish coverage." *Northern Sec. Ins. Co. v. Dolley*, 669 A.2d 1320, 1322 (Me.1996). Therefore, St. Paul has a duty to defend. In summary, the underlying complaint alleges, in general but sufficient terms, a claim for inducing patent infringement; that claim includes a potential scenario of belittling to a third party the validity of a patent of another; the policy covers injury or damage resulting from making known to third parties material that belittles the work of others; and the policy requires St. Paul to defend actions for covered injury or damage.

[¶ 14] We answer the question posed to us by the United States District Court in the affirmative.

---

**2.** We have been unable to locate any reported Maine or New England cases discussing the tort of belittlement.