STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. CV-00-563

N.F. LUCE, INC., ET AL,

            Plaintiffs

      v.                                DECISION AND JUDGMENT

                                        DONALD L. GARBRECHT
PEERLESS INSURANCE COMPANY,                     LAW LIBRARY

            Defendant

                                             MAY 8 2002

      This matter is before the court on the amended complaint of the

plaintiffs N.F. Luce, Inc., ("N.F. Luce") and North East Insurance Company

("North East") alleging that the defendant Peerless Insurance Company

("Peerless") breached its policy of insurance with N.F. Luce (Count I) and

seeking a declaratory judgment that there is coverage under the policy for

wrongful cutting and property damages claimed by David Johnson and

Maxine Walsh-Johnson against Norman Luce ("Norman") (Count II).

      N.F. Luce assigned any rights it has in this matter against Peerless to

North East and seeks no affirmative recovery in its own name.  North East is

the real plaintiff party-in-interest and seeks partial reimbursement from

Peerless for amounts it paid to settle the Johnson's claims pursuant to a

policy it issued to Norman.

      Peerless denies such coverage and has filed a counterclaim seeking a

reformation of the policy to exclude any liability for claims arising from

logging activities by its insured.[1]

--------------------------------------------------

      [1]Although not specifically raised in its counterclaim, Peerless alternately
asserts in its trial brief that its policy should be declared void because of
misrepresentations by its insured.  Trial Brief of Defendant at 2.

# I. BACKGROUND

In the early 1980's, Norman and Beth Luce formed a wholly owned Maine corporation under the name N. F. Luce Forest Products. Beth Luce Deposition ("Beth Dep.") at 4-5; *see* Stipulation ("Stip.") ¶ 1. At the time of its formation, the corporation did some road construction, but was working "basically as a full-time logging business". Beth Dep. at 7. In the early 1990's the company stopped its full-time logging business, shifted its focus to road building and changed its name to N. F. Luce, Inc. *Id.*[2] The words "Forest Products" were deleted from the corporation's name to satisfy the concerns of its workers compensation insurance carrier. According to Beth Luce

> "No matter what we did, they saw us as trying to hide logging people doing something -- you know, they wouldn't accept us doing anything else unless we got rid of the words because obviously Forest Products means we're in the logging business -- according to workers comp and according to all the insurance companies. They had a problem with that name."

*Id.* However, N.F. Luce did not completely stop its logging operations after the name change. *Id.* at 10.

Since its formation, Norman has been an employee of N.F. Luce doing logging work and has not engaged in logging activities in his own name. Norman Dep. at 16; Beth Dep. at 33-35; *see* Stip. ¶ 2.

From the 1980's until approximately 1991 or 1992, Mark Fox was an insurance agent who handled insurance matters for N.F. Luce. Mark Fox

---

2Beth Luce testified at her deposition that N.F. Luce Forest Products, Inc., merely changed its name to N.F. Luce, Inc. *Id.* Norman Luce testified to a belief that the former entity ceased to exist and was immediately replaced by the latter. Norman Luce Deposition ("Norman Dep.") at 13-16. The court finds that Beth Luce has a more reliable understanding of the corporation's evolution.

Deposition ("Fox Dep.") at 3-5. Thereafter, the corporation dealt with another agent and obtained a policy of general liability insurance with Hanover Insurance Company. Beth Dep. at 12-13; Fox Dep. Ex. 1 & 2. The Hanover policy covered logging operations performed by N.F. Luce. Fox Dep. Ex. 1 & 2. In the fall of 1997, the corporation decided to change agents and engaged Fox to replace the policy it had with Hanover. Beth Dep. at 13-14. Fox was employed at the time with the Woodrow Cross Agency ("WCA"), an agency with binding authority to write policies for Peerless. Fox Dep. at 4-5.

On or about September 16, 1997, Fox forwarded the insurance application of N.F. Luce to Peerless for a quote. Fox Dep. Ex. 6. On December 6, 1997, Peerless issued policy number CBP9201873 ("Peerless Policy") to the corporation with an effective coverage period from December 6, 1997 to December 6, 1998. Stip. ¶ 3. The declarations page of the policy described the business of N.F. Luce as "Excavation & Road Work". Stip. ¶ 4, Ex. A at 2. On its face, the policy provided comprehensive general liability coverage and included language limiting changes to the policy:

> This policy contains all of the agreements between you and us concerning the insurance afforded. The first Named Insured shown on the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

Stip. ¶ 4, Ex. A at 11. The policy did not include a written endorsement excluding losses arising out of logging activities. *Id.*

Subsequent to the inception of the Peerless Policy, Fox informed Beth Luce that Peerless did not want to cover logging operations by N.F. Luce and

she authorized Fox to obtain such coverage with North East. Beth Dep. at 16-19. Fox informed Beth Luce that a policy providing that coverage would have to be in Norman's name, not the corporation's. Fox Dep. Ex. 8. It was her understanding from Fox that this was necessary because Norman was the president of the company and the person doing the cutting. Beth Dep. at 33-35. However, Beth and Norman Luce also understood that Norman's employee-status doing logging activities would not change. *Id*; Norman Dep. at 16.

On December 17, 1997, North East issued policy number PF85180076 ("North East Policy") to Norman, not N.F. Luce, with an effective coverage period from December 17, 1997 to December 17, 1998. Stip. ¶ 5. The policy only covered liability for claims arising out of logging activities by Norman. Stip. ¶ 6, Ex. B at 3.

On November 17, 1997, N.F. Luce entered into a contract with Robert Barker to cut timber on Barker's land in Starks, Maine. Stip. ¶¶ 7, 8, Ex. C. The cutting occurred during January and February 1998. Stip. ¶ 9. On October 7, 1998, the Johnson's served Norman with a Notice of Claim asserting that he wrongfully cut trees on their land which was adjacent to Barker's. Stip. ¶ 10. The Johnson's did not assert a claim against N.F. Luce.

North East investigated the claim and asked Peerless to participate in a proposed settlement. Stip. ¶¶ 13, 14. Peerless declined and on May 10, 1999, North East paid $53,333.34 to the Johnson's to settle their claim. Stip. ¶¶ 15, 16. The parties do not dispute the amount or the propriety of the settlement payment made by North East and they agree that it was fair

4

and reasonable. Stip. ¶¶ 17, 18.

The focal issue in this case is whether the Peerless Policy issued to N.F. Luce provides coverage for the Johnson's claim. N.F. Luce has assigned any rights of indemnification it may have against Peerless to North East. Stip. ¶ 19. North East seeks reimbursement of one-half the settlement amount it paid to the Johnson's.

## II. DISCUSSION

### A. Coverage

Interpretation of an insurance policy is a question of law. *Jack v. Tracy*, 1999 ME 13, ¶ 8, 722 A.2d 869, 871. Standard insurance policies are to be construed against the insurer, with the unambiguous language interpreted according to its plain and commonly accepted meaning. *Id.* An insurance policy is ambiguous if it is reasonably susceptible to different interpretations. *Apgar v. Commercial Union Ins. Co.*, 683 A.2d 497, 498 (Me. 1996). In determining whether the contract is ambiguous, the court must evaluate the instrument as a whole and construe it in accordance with the intentions of the parties. *See id.* (citation omitted). In this process, the court also must view the policy's language "from the perspective of an average person, untrained in either the law or insurance." *Foundation For Blood Research v. St. Paul Marine and Fire Ins. Co.*, 1999 ME 87, ¶ 11, 730 A.2d 175, 180; *see Peerless Ins. Co. v. Wood*, 685 A.2d 1173,1174 (Me. 1996).

On its face, the Peerless Policy is a comprehensive general liability policy. In relevant part, the breadth of its scope is modified, if at all, by its

description of N.F. Luce's business as "Excavation & Road Work". The policy does not expressly exclude damages or losses resulting from logging activities. The court concludes that the policy is ambiguous as to whether such activities by N.F. Luce were within the ambit of its otherwise broad liability coverages or excluded by its description of the insured's business.

Extrinsic evidence makes clear that the logging operations of N.F. Luce were covered activities under the Peerless Policy. Although the corporation primarily engaged in excavation and road work, its business also included logging operations, which it sought to insure. N.F. Luce engaged the services of Peerless' agent, Mark Fox, who was familiar with their business, their insurance needs, and their then-existing policy with Hanover. It follows that the corporation reasonably believed that its logging operations were covered under the terms of the comprehensive general liability policy the agent secured for them.

In like measure, although Peerless may not have intended to cover the corporation's logging activities, it neither expressed this to their insured before issuance of the policy, nor made its position clear in the language of contract. After issuing the policy, the insurance company came to its own realization and understanding that it had in fact covered that risk. It removed N.F. Luce's logging truck and Norman's logging-related payroll from the policy and its agent, Mark Fox, took steps to secure the North East policy. What it did not do was amend the policy by a written endorsement excluding damages arising out of its insured's logging operations. *See* Stip. ¶ 4, Ex. A at 11.

6

Thus, when viewed "from the perspective of an average person, untrained in either the law or insurance," it is not unreasonable to conclude that the policy provided such coverage. *Id.* Accordingly, the court finds that the Peerless Policy does provide coverage for the claim asserted by the Johnson's

## B.    Reformation

Based upon the largely undisputed facts in this case, reformation of the Peerless Policy is not warranted. There did not exist a mutual mistake of fact, or a mistake on one side and fraud or inequitable conduct on the other, at the time of the issuance of the Peerless Policy concerning coverage of the logging operations that undermined the validity of that contract as originally drafted. *Lawrence A. Nadeau et al. v. John P. Pitman et al.*, 1999 ME 104, ¶16, 731 A.2d 863, 867 (citations omitted); see COUCH ON INSURANCE 3d, § 26:1 at 2-4. The subsequent discovery by Peerless that its policy provided liability coverage for its insured's logging operations, even though not contemplated by the carrier at the time of issuance of the policy, was not a mutual mistake rendering the contract unenforceable. *Id.*

## C.    Misrepresentation

There is also no credible evidence that N.F. Luce, acting through Beth or Norman Luce, misrepresented the nature or existence of its logging operations to Peerless or otherwise provided false and fraudulent information that was material to that risk. Accordingly, Peerless is not entitled to void the policy pursuant to 24-A M.R.S.A. § 2411.

7

## III. DECISION

Based upon the foregoing, and pursuant to Rule 79(a) M.R. Civ. P., the Clerk is directed to enter this Decision and Order on the Civil Docket by a notation incorporating it by reference and the entry is

1. As to Count II of Plaintiffs' Complaint, it is adjudged and declared that the Peerless Policy issued to the plaintiff N.F. Luce, Inc., does provide coverage for the losses claimed by David Johnson and Maxine Walsh-Johnson;

2. As to Count I of Plaintiffs' Complaint, Judgment is entered for the plaintiff North East Insurance Group, as assignee of N.F. Luce, Inc., in the amount of $26,666.67, together with lawful interest and costs of this action; and

3. As to Defendant's Counterclaim, Judgment is entered for Plaintiffs.

Dated:  April 18, 2002

_____
Justice, Superior Court

8

Date Filed ___09-15-00___ ___CUMBERLAND___ Docket No. __CV 00-563__
County

Action __CONTRACT__

N.F. LUCE, INC.                                    PEERLESS INSURANCE COMPANY
NORTH EAST INSURANCE COMPANY

vs.

| Plaintiff's Attorney   JOHN WALL, III, ESQ. | Defendant's Attorney |
|---|---|
| ~~NOAH D. WUESTHOFF~~, ESQ 774-3906<br>PO BOX 7046, PORTLAND ME 04112 | JAMES D. POLIQUIN, ESQ. 774-7000<br>PO BOX 4600, PORTLAND, ME 04112-4600 |

| Date of Entry | |
|---|---|
| 2000<br>Sept. 18 | Received 09-15-00:<br>Complaint Summary Sheet filed. |
| "      " | Complaint filed. |
| Sept. 27 | Received 9-27-00.<br>Defendant's Answer and Counterclaim, filed. |
| Oct. 3 | Received 10-2-00.<br>Counterclaim Summary Sheet, filed. |
| Oct. 04 | Received 10/04/00:<br>Acceptance of service filed showing receipt of service on Sept. 26, 2000 upon Peerless Insurance Co. to James Poliquin, Esq. |
| Oct. 6 | Received 10-6-00.<br>Plaintiff's answer to defendant's counterclaim filed. |
| Oct. 26 | Received 10-26-00:<br>Scheduling Order filed. (Delahanty, J.).<br>Scheduling Order filed. Discovery deadline is June 26, 2001.<br>On 10-26-00 Copies mailed to James Poliquin, Esq. and Noah D. Wuesthoff, Esq. |
| Nov. 8 | Received 11-08-00<br>Defendant's Notification of Discovery Service filed.<br>Notice to take Oral Deposition of Norman F. luce , Beth B. Luce and N.F.Luce,Inc. Served on Noah D.Wuesthoff,Esq. on 11-07-00 |
| Nov. 13 | Received 11-13-00<br>Defendant Notification of Discovery Service filed .<br>Subpoena to Produce Evidence or to Permit Inspection of Documents Served on North East Insurance Group ,c/oNoah D. Wuestoff,Esq. on 11-09-00 |