STATE OF MAINE                                         SUPERIOR COURT
KENNEBEC, ss                                           CIVIL ACTION
                                                       DOCKET NO. CV-09-183

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

        Plaintiff

        v.                                       JUDGMENT

ROGER T. LINTON
and the ESTATE OF
JAMES CAREY,

        Defendants

In its amended complaint for a declaratory judgment, the plaintiff asks the court

to determine the following: (1) whether its automobile policy with Jonathan Jennings

provides liability coverage for a motor vehicle collision on October 7, 2008, in Chelsea,

involving vehicles operated by defendant Roger Linton and James Carey; (2) whether

the plaintiff has a duty to defend defendant Linton for any claims resulting from that

collision; and (3) whether the plaintiff has a duty to indemnify defendant Linton for any

claims resulting from that collision.

FACTS

State Farm Mutual Automobile Insurance Company ("State Farm") contracted

with Jonathan Jennings to provide insurance for the vehicle at issue.[1] Defendant Linton

was employed by Jonathan Jennings, d/b/a Forgotten Stone Works, during 2006-2007,

after which he continued to work with Mr. Jennings as an independent contractor.

---

[1] Plaintiff's Exhibit 1, the insurance policy between State Farm and Mr. Jennings, was admitted without objection. The policy states that its policy period is from "APR 25 2007 to OCT 25 2007." State Farm does not contest that the vehicle was covered by insurance on October 7, 2008. (Pl.'s Amended Compl. ¶ 5.) Given no other policy language, the court assumes that the policy terms in place at the time of the collision are identical to those in plaintiff's exhibit 1.

Defendant Linton is not related to Mr. Jennings and never spoke to Mrs. Jennings. As an employee, he used a Forgotten Stone Works vehicle to drive back and forth to work. Mr. Jennings did not discuss with defendant Linton any restrictions on the use of the vehicle. Mr. Jennings allowed Tina Savage, also an employee until June 2007 and defendant Linton's girlfriend, to use a Forgotten Stone Works vehicle during her employment when her vehicle broke down or when she did estimates and deliveries after work. Mr. Jennings did not discuss with Ms. Savage or defendant Linton any restrictions on the use of the vehicle loaned to Ms. Savage. Eventually, Mr. Jennings told Ms. Savage that she had to get her own vehicle and she did.

Before the collision, defendant Linton had used a Forgotten Stone Works truck for personal use on his own job, getting groceries, fishing, and to haul hay. Mr. Jennings knew about the use of the vehicle for hauling hay because he asked that defendant Linton sweep out the truck. During 2008, defendant Linton worked as a subcontractor for Forgotten Stone Works. As a subcontractor, defendant Linton did not use Forgotten Stone Works vehicles after the regular workday, except possibly to haul hay, and no vehicles were provided to him. As an independent contractor, if defendant Linton required a vehicle, he specified what he would use the vehicle for. Jason Holland, another Forgotten Stone Works employee turned independent contractor, agreed that if he planned to use a vehicle for something other than grocery shopping, he would ask Mr. Jennings. Mr. Jennings stressed that use of Forgotten Stone Works vehicles by defendant Linton as an independent contractor was to be infrequent. Mr. Holland recalled using trucks a couple of times when he worked as an independent contractor with Forgotten Stone Works but never used the flatbed truck.

Defendant Linton did not use Forgotten Stone Works vehicles to take his girlfriend out, to do personal errands, or to visit friends. He had never used a Forgotten

2

Stone Works vehicle while drinking so that was not an issue Mr. Jennings had to address. Defendant Linton agreed that October 7, 2008 was the first time he operated a Forgotten Stone Works vehicle while drinking, giving friends a ride, or visiting friends in a different town. Mr. Jennings trusted defendant Linton to use the vehicles "in his good judgment."

In October 2008, defendant Linton and Jason Holland worked as subcontractors on a job for Forgotten Stone Works at the Kents Hill School in Kents Hill. The project involved the installation of a stone entry in a sports field and required 10-15 tons of granite and various pieces of equipment. The materials and equipment were taken to the job site each morning and returned each evening; they could not be left at the school because the field was being used.

On October 7, 2008, defendant Linton and Jason Holland arrived at Forgotten Stone Works at 7:00 a.m. and drove to the job site in a 20-foot long by 8-foot wide flat bed truck with a carrying capacity of 8000 pounds and a gross weight of 14,000 pounds. (Pl.'s Ex. 2.) This was the first time they had used this truck. The truck is cumbersome to operate and was used for work purposes only.

On the day of the accident, Mr. Jennings went to the job site. He did not discuss with defendant Linton any plans to use the truck after work and no permission to do so was requested by, or given to, defendant Linton. Between 3:00 and 4:00 p.m. on October 7, Mr. Jennings received a voicemail message from defendant Linton, in which he asked if he could take the truck to his home in Readfield, located approximately eight miles from the job site. At the time of the call, defendant Linton intended to take the truck home, which was the regular practice. Defendant Linton had never borrowed the flatbed truck previously. Mr. Holland agreed that defendant Linton left that message on Mr. Jennings's phone. Mr. Holland recalled that the standard procedure

was to tell Mr. Jennings what the truck would be used for. In the message, defendant Linton did not suggest he would visit his girlfriend in Winthrop, go to Sully's Tavern in Winslow, go to a friend's house in Farmingdale, go to Chelsea, or that he would be drinking while using the truck. Mr. Jennings would have denied permission if defendant Linton had mentioned any of those plans. Mr. Holland agreed that if defendant Linton had told Mr. Jennings that defendant Linton intended to drink while using the truck, Mr. Jennings would have said "no." Mr. Holland understood "there were limits" on what the truck could be used for.

Mr. Jennings returned the call and left a message on Mr. Holland's cell phone, which defendant Linton was using. Mr. Jennings said it made sense to drive the shorter distance, approximately eight miles, from the job site to defendant Linton's home than to drive past his home to Forgotten Stone Works and back to defendant Linton's home. Mr. Jennings stated that it was fine for defendant Linton to drive to his house and to the job site the next morning. Because of the way the truck handled and the cargo of materials and equipment, it was inappropriate to use the truck for personal use.

When defendant Linton left the Kents Hill School on October 7, 2008, he did not go to his home. He went first to his girlfriend's workplace in Winthrop. He then went to the Irving Station in Manchester and drank two sixteen-ounce beers. Next he traveled to Jimmie Pond in Hallowell and to the parking lot of Sully's Tavern in Winthrop. He then drove to his friend Rick Halley's home in Farmingdale and then headed to Chelsea to visit Mr. Halley's nephew. The collision between the vehicles operated by defendant Linton and James Carey occurred on Route 17, in Chelsea, on the way to the nephew's house, twenty miles from defendant Linton's home and twenty miles from the Kents Hill School. Defendant Linton's blood test revealed a blood alcohol content of .12%. Mr. Carey died as a result of the collision.

4

Although Mr. Jennings never specified, defendant Linton knew he would not be allowed to drive the vehicles if he had been drinking. Defendant Linton knew there were limits on the use of the vehicles that did not have to be stated. Defendant Linton knew that his conduct on October 7, 2008 would not have been allowed by Mr. Jennings.

ANALYSIS

The policy states that State Farm will "pay damages which an *insured* becomes legally liable to pay" due to bodily injury or property damage "caused by accident resulting from the ownership, maintenance or use of *your car*," and will "defend any suit against an *insured* for such damages." (Pl.'s Ex. 1 at 7.) The policy's definition of *"insured,"* includes Mr. Jennings, his wife, his relatives, and "any other *person* while using such a *car* if its use is within the scope of consent of [Mr. Jennings] or [Mr. Jennings's wife]." (Id.) Because defendant Linton is not related to Mr. Jennings, he is an "other person" for coverage purposes; his coverage status is therefore dependent upon a determination of whether his use of the truck was "within the scope of consent" from Mr. Jennings.

Maine law has established the order in which the court should address these three requests:

> To secure the just, speedy and inexpensive determination of an action involving a duty to defend and a duty to indemnify and avoid a duplication of trials requires that courts proceed in the following order: the determination of a duty to defend, then the determination of liability in the underlying action, and finally the determination of the duty to indemnify.

Penney v. Capitol City Transfer, Inc., 1998 ME 44, ¶ 5, 707 A.2d 387, 389; see also State Farm Mut. Auto. Ins. Co. v. Koshy, 2010 ME 44, ¶ 62, 995 A.2d 651, 670.

The Law Court has "said that the duty to indemnify action should not be brought, or should be stayed, until the underlying action is completed in order to avoid

5

duplicative litigation and to spare insureds the costs of declaratory judgment actions." Foremost Ins. Co. v. Levesque, 2007 ME 96, ¶ 2, n. 1, 926 A.2d 1185, 1186. Indeed, the Law Court has "repeatedly cautioned against prematurely deciding the issue of indemnification." Am. Universal Ins. Co. v. Cummings, 475 A.2d 1136, 1137 n.1 (Me. 1984) (citing Baybutt Construction Corp. v. Commercial Union Ins. Co., 455 A.2d 914, 924-25 (Me. 1983) [overruled by Peerless Ins. Co. v. Brennon, 564 A.2d 383, 386 (Me. 1989)]; Union Mutual Fire Ins. Co. v. Inhabitants of Town of Topsham, 441 A.2d 1012, 1016 n.2 (Me. 1982); American Policyholders' Ins. Co. v. Cumberland Cold Storage Co., 373 A.2d 247, 250 (Me. 1977)). When "the coverage dispute depends entirely on the relationship between the insurer and the insured, not on facts to be determined in the underlying litigation," the indemnification issue may be determined prior to resolution of the underlying action. Koshy, 2010 ME 44, ¶ 63, 995 A.2d at 670 (quoting Patrons Oxford Mut. Ins. Co. v. Garcia, 1998 ME 38, ¶ 7, 707 A.2d 384, 386). For example, "[w]hen the case is based on such issues as nonpayment of a premium, cancellation of a policy, failure to cooperate or lack of timely notice, then [the dual obligations to defend and indemnify] may be appropriately determined prior to the entering of judgment." Id. (quoting Cumberland Cold Storage Co., 373 A.2d at 250). Otherwise, a determination on indemnification generally must be deferred until after trial of the underlying case "because duty to indemnify cases involve the comparison of the policy with the facts proved at trial," and "[t]he insured's duty to indemnify may depend on the actual facts or legal theory behind the underlying action against the insured by the injured party." Id. at ¶ 62, 995 A.2d at 670 (quotations and ellipsis omitted).

However, "[t]he duty to defend is broader than the duty to indemnify, and an insurer may have to defend before it is clear whether there is a duty to indemnify." Penney, 1998 ME 44, ¶ 5, 707 A.2d at 389 (quoting Commercial Union Ins. Co. v. Royal

Ins. Co., 658 A.2d 1081, 1083 (Me. 1995)). "Whether an insurer has a duty to defend in a particular case is a question of law," determined by "comparing the allegations in the underlying complaint with the provisions of the insurance policy." Id. at ¶ 4, 707 A.2d at 388 (quotations and citations omitted); see also Found. for Blood Research v. St. Paul Marine and Fire Ins. Co., 1999 ME 87, ¶ 4, 730 A.2d 175, 177 ("It is black letter law in this State that an insurer's duty to defend is determined by comparing the allegations in the underlying complaint with the provisions of the insurance policy."). "If the underlying complaint discloses a potential or a possibility for liability within the coverage of the policy, the insurer has a duty to defend." Found. for Blood Research, 1999 ME 87, ¶ 4, 730 A.2d at 177. "If the allegations in the underlying tort action are within the risk insured against and there is any potential basis for recovery, the insurer must defend the insured regardless of the actual facts on which the insured's ultimate liability may be based." Elliott v. Hanover Ins. Co., 1998 ME 138, ¶ 6, 711 A.2d 1310, 1312 (quoting Gibson v. Farm Family Mut. Ins. Co., 673 A.2d 1350, 1352 (Me. 1996)). "This is the case even when the undisputed facts show the injury in question was not covered by the policy." Bucci v. Essex Ins. Co., 393 F.3d 285, 290 (1st Cir. 2005) (citing Elliott, 711 A.2d at 1312).

The parties have not supplied the court with any complaint filed by the Estate of James Carey in order to allow comparison with the insurance policy for purposes of determining State Farm's obligation to defend. From the Estate's answer to State Farm's complaint, however, the court can ascertain that the Estate agrees that "[o]n or about October 7, 2008, Defendant Linton was operating the Insured Vehicle on Eastern Avenue in Chelsea, Maine, when a collision occurred between the Insured Vehicle and a vehicle operated by James Carey" (Pl.'s Amended Compl. ¶ 9, Estate Ans. ¶ 9); that the Estate intends "to assert claims against Defendant Linton arising out of the vehicle

7

collision that occurred on October 7, 2008" (Pl.'s Amended Compl. ¶ 12, Estate Ans. ¶ 12); that the Estate, through counsel, has made a demand that State Farm pay "the limit of coverage under the Policy's liability provisions in settlement of the claims the Estate intends to assert against Defendant Linton" (Pl.'s Amended Compl. ¶ 13, Estate Ans. ¶ 13); that the Estate denies that defendant Linton's use of the insured vehicle was not within the scope of Mr. Jennings's consent (Pl.'s Amended Compl. ¶ 11, Estate Ans. ¶ 11); and that the Estate disagrees with State Farm's contentions that the policy does not afford coverage for claims against defendant Linton and the plaintiff has no duty to defend or indemnify defendant Linton for claims resulting from the October 7, 2008 collision (Pl.'s Amended Compl. ¶¶ 14, 15, Estate Ans. ¶¶ 14, 15).

Because the policy provides insurance coverage for a person driving the insured vehicle with the consent of Mr. Jennings (see Pl.'s Ex. 1, Pl.'s Amended Compl. ¶ 8; Estate Ans. ¶ 8), and because the Estate contends that Mr. Jennings consented to defendant Linton's request to take the truck (Pl.'s Amended Compl. ¶ 11; Estate Ans. ¶ 11), which defendant Linton was driving at the time of the collision, there exists the possibility or potential for State Farm's insured's liability, which would be sufficient to trigger its duty to defend if the Estate had initiated an action against defendant Linton. See, e.g., Found. for Blood Research, 1999 ME 87, ¶ 4, 730 A.2d at 177.

In this case, no party has objected to the consideration of the issue of coverage and no party has requested that this action be stayed until the underlying action is completed. See American Policyholders' Ins. Co. v. Kyes, 483 A.2d 337, 340 (Me. 1984) (defendants waived right to a defense by insurer by not objecting to the coverage issue being the focus of the declaratory judgment action and trying the case on the coverage issue); see also U.S. Fidelity & Guaranty Co. v. Rosso, 521 A.2d 301, 303 (Me. 1987) ("There are . . . circumstances . . . where a declaratory judgment may be entered

8

simultaneously as to both the duty to defend and the duty to indemnify. . . . [I]f the insured goes to trial on the indemnity issue without seeking a preliminary determination of the duty to defend, he may be deemed to have waived his right to object to a simultaneous declaratory judgment against him on the duty to defend.") (citing Cumberland Cold Storage, 373 A.2d at 250; Kyes, 483 A.2d at 339-40). Accordingly, the court considers State Farm's request for a declaratory judgment on the issue of liability coverage.

As a threshold issue, the parties disagree as to the burden of proof in the context of a declaratory judgment. In American Motorists Ins. Co. v. Lacourse, the Law Court noted that the assignment of the burden of proof in a declaratory judgment had never been decided, but declined to determine the issue on the case before it. Lacourse, 314 A.2d 813, 818-19 (Me. 1974). In Hodgdon v. Campbell, the Law Court addressed the issue outside of the insurance context. Noting the "pointed commentary and debate" surrounding the allocation of the burden of proof in declaratory judgment actions, Hodgdon, 411 A.2d 667, 670 n.1 (Me. 1980), the court held "that both fairness and the nature of declaratory relief dictate that the allocation of the burden of proof in declaratory judgment actions must be determined by reference to the substantive gravamen of the complaint." Id. at 670. Specifically, the "party who asserts the affirmative of the controlling issues in the case, whether or not he is the nominal plaintiff in the action, bears the risk of non-persuasion." Id. at 670-71.

In determining whether coverage or non-coverage is the "affirmative of the controlling issues in the case," id., the court looks to the Law Court's apportionment of the burden of proof applicable to insurance cases.

> The interpretation of an insurance contract is a matter of law that we review de novo. Insurance contract language is ambiguous if it is reasonably susceptible of different interpretations or if any ordinary

9

person in the shoes of the insured would not understand that the policy did not cover claims such as those brought. Any ambiguity in an insurance contract is construed strictly against the insurer and liberally in favor of the insured. It is [the insured's] burden, however, to show that his injury falls within the scope of the contract.

Pelky v. Gen. Elec. Capital Assurance Co., 2002 ME 142, ¶ 10, 804 A.2d 385, 387 (quotations and citations omitted); see also Bouchard v. Prudential Ins. Co. of Am., 135 Me. 238, 239, 194 A. 405, 406 (1937) ("The burden of proof is upon the plaintiff to show that the death resulted from one or more of the causes enumerated by the terms of the contract as establishing liability of the defendant."); Baber, Brett D, Ten Rounds with the Insurance Company, 16 Maine Bar J. 148 (2001) ("When the insurer has defended, the insured will have the initial burden of proof that the general grant of coverage applies to the asserted claims.[2] Once coverage is established, the burden of proof shifts to the insurer to establish that any asserted policy exclusions may apply. Any ambiguities in the policy, either in the grant of coverage or in the exclusions, must be construed against the [insurer] in favor of coverage.") (footnotes omitted).

In order for defendant Linton to qualify as an "insured" under State Farm's policy with Mr. Jennings, the party seeking coverage must establish by a preponderance of the evidence that defendant Linton drove the insured vehicle "within the scope of consent" from Mr. Jennings. (Pl.'s Ex. 1 at 7.) With regard to the scope of consent, Maine follows the "minor deviation" rule: "the actual use is primarily for the purpose for which permission was given and there are no more than minor deviations as to time and place of operation." Savage v. American Mut. Liability Ins. Co., 158 Me. 259, 263, 182 A.2d 669, 671 (1962); see Taylor v. United States Fidelity & Guaranty Co., 519 A.2d

---

[2] See also Jones v. Foster, 945 So.2d 262, 266 (La. Ct. App. 2d Cir. 2006) ("[T]he plaintiff has the burden of proving express or implied permission of the insured in order to obtain coverage under the omnibus clause. The fact of initial permission must be proved as any other fact by a preponderance of the evidence without the aid of any presumptions.") (citation omitted).

182, 184 (Me. 1986); Allstate Ins. Co. v. Lyons, 400 A.2d 349, 353 (Me. 1979); Johnson v. Am. Auto. Ins. Co., 131 Me. 288, 293, 161 A. 496, 498 (1932).

The Law Court has noted the difference when using a company car between essential personal errands and social purposes. Taylor, 519 A.2d 183-84. A social purpose that expands the time and distance of the operation for which consent was given may be sufficient to remove any resulting harm from coverage. Savage, 158 Me. at 260-61, 182 A.2d at 670; see also Johnson, 131 Me. at 290, 293, 161 A. at 497, 498 ("Permission to use an automobile to attend a funeral was not inclusive of a pleasure trip. Express permission for one purpose did not imply all purposes. A liability policy did not cover an automobile which was being used by insured's employee on his own business, without permission.") (citations omitted). The four cited cases indicate that Maine law has held that use of a vehicle exceeded the scope of consent when there was a significant expansion of time (Savage, 158 Me. at 260-61, 182 A.2d at 670); distance (Johnson, 131 Me. at 290, 161 A. at 497); purpose (Taylor, 519 A.2d 183-84); and person (id., see also Concord Gen. Mut. Ins. Co. v. Hills, 345 F. Supp. 1090, 1093 (D.Me. 1972)).

In the present case, defendant Linton expanded the axes of time, distance, and purpose sufficiently that his conduct could not be considered a "minor deviation" from the scope of Mr. Jennings's consent. The court finds the testimony of Mr. Jennings to be credible. If the scope of Mr. Jennings's consent is based upon the exchange of telephone messages on October 7, 2008, between defendant Linton, using Mr. Holland's phone, and Mr. Jennings, defendant Linton was authorized to take the truck to his home and return with it to the work site the following morning. Even if the scope of his consent were to be based on previous dealings between Mr. Jennings and defendant Linton, including even when defendant Linton was an employee rather than an independent contractor, defendant Linton would be permitted to use the vehicle for necessary

11

personal errands or hauling hay. Regardless of which scope of consent the court applies, defendant Linton's actions on October 7, 2008, significantly exceeded the scope of that consent. The testimony and the parties' course of conduct reveal that it was understood that defendant Linton could take Mr. Jennings's vehicles to and from work and use them reasonably. See Taylor, 519 A.2d 183-84 ("When the company permitted one of its vehicles to be used for [commuting] purpose[s], it arguably gave the employee implied permission to use the vehicle for essential personal errands (such as grocery shopping) because it knew that the employee had no other means of taking care of those essential needs.")

Defendant Linton's deviation from this expectation was not minor. In terms of distance, the collision occurred twenty miles from his home or the work site. In terms of purpose, his social undertakings and illegal activity were never contemplated in connection with his use of the vehicle and far exceeded essential personal errands. It was not agreed that he would take passengers or use the truck while drinking.

The Estate's central argument, that Mr. Jennings expressed no specific limitations on the use of the vehicle and therefore any use of the vehicle falls within the scope of his consent, is unavailing. The testimony and the course of conduct between the parties reveal a clear understanding of the time, distance, and purpose within which defendant Linton could use Mr. Jennings's vehicles. Without Mr. Jennings's express prohibition on illegal activity, namely, driving with a blood alcohol content of .12%, Mr. Jennings, defendant Linton, and Mr. Holland agreed that there were limits to permitted uses and this behavior was not within Mr. Jennings's consent. Mr. Jennings was not required expressly to prohibit illegal activities in order for such activities to fall outside the scope of his consent.

12

Because the court finds that defendant Linton's use of the insured vehicle was more than a minor deviation from the scope of Mr. Jennings's consent, defendant Linton is not an insured under the plaintiff's policy with Mr. Jennings.

The entry is

The court declares the following:

State Farm Mutual Automobile Insurance Company has no duty to defend defendant Linton for any claims resulting from the collision of October 7, 2008;

State Farm Mutual Automobile Insurance Company's policy with Jonathan Jennings does not provide liability coverage for the motor vehicle collision on October 7, 2008; and

State Farm Mutual Automobile Insurance Company has no duty to indemnify defendant Linton for any claims resulting from the collision of October 7, 2008.

Dated: November 18, 2010

Nancy Mills
Justice, Superior Court

13